**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

VPNETWORKS, LLC
D/B/A TORGUARD,

Plaintiff,

vs. Case No:6:19-cv-01179-PGB-LRH

COLLECTIVE 7, INC., and TEFINCOM S.A.
D/B/A NORDVPN,

Defendants.
______________________________________/

**MOTION TO DIMISS BY DEFENDANT TEFINCOM S.A. D/B/A NORDVPN**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. ALLEGATIONS IN COMPLAINT ..... 3
III. LEGAL STANDARD ..... 5
IV. ARGUMENT ..... 5
A. TORGUARD'S FUTSA CLAIM FAILS ..... 5
1. TorGuard Fails to Describe Any Trade Secret, Yet Alone One With Reasonable Particularity ..... 5
2. TorGuard Fails to Allege that It Took Steps to Protect the Privacy of Its Purported Trade Secret ..... 7
B. TORGUARD'S CADRA CLAIM FAILS ..... 9
1. The Claim Is Preempted by the FUTSA ..... 9
2. There Are No Allegations of Any Wrongdoing By NordVPN ..... 10
C. TORGUARD FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS ..... 12
1. The Claim is Preempted by the FUTSA ..... 12
2. The Claim Fails to State A Claim for Relief ..... 13
V. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page**

**Case LawOther Authorities**

*Allegiance Healthcare Corp. v. Coleman*,
232 F. Supp. 2d 1329 (S.D. Fla. 2002) .......... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 13, 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5, 8

*Coach Services, Inc. v. 777 Lucky Accessories, Inc.*,
752 F. Supp. 2d 1271 (S.D. Fla. 2010) .......... 13, 14

*Cornell Pump Co. v. Thompson Pump and Manufacturing Co.*,
2018 WL 3827249 (M.D. Fla. May 18, 2018) (dismissing .......... 14

*Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*,
797 F.3d 1248 (11th Cir. 2015) .......... 13

*EMP Industries Inc. v. Keco, Inc.*,
2017 WL 10899974 (M.D. Fla. Nov. 2, 2017) .......... 14

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*,
647 So.2d 812 (Fla. 1994) .......... 13

*Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*,
687 So.2d 821 (Fla. 1996) .......... 13

*Levenger Co. v. Feldman*,
516 F. Supp. 2d 1272 (S.D. Fla. 2007) .......... 6

*M.C. Dean, Inc. v. City of Miami Beach, Fla.*,
199 F. Supp. 3d 1349 (S.D. Fla. 2016) .......... 8

*Pelfrey v. Mahaffy*,
2018 WL 3110797 (S.D. Fla. Feb. 7, 2018) .......... 10, 13

*Taxinet, Corp. v. Leon*,
2018 WL 3405243 (S.D. Fla. July 12, 2018) .......... 6, 7

*Temurian v. Piccolo*,
2019 WL 1763022 (S.D. Fla. April 22, 2019) .......... 8

*ThinkLite LLC v. TLG Solutions, LLC*,
2017 WL 5972888 (S.D. Fla. Jan. 31, 2017) ........ 9

*Treco Int'l S.A. v. Kromka*,
706 F. Supp. 2d 1283 (S.D. Fla. 2010) ........ 6

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009) ........ 5

**Statutes**

Fla. Stat. Ann. § 688.008(1) ........ 12

Fla. Stat. Ann. § 688.002(4)(b) ........ 10

Fla. Stat. Ann. § 668.803(1) ........ 14

Fla. Stat. Ann § 668.803(3) ........ 14

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........ 5

## I. INTRODUCTION

Plaintiff VPNetworks, LLC's ("TorGuard" or "Plaintiff") claims are premised on TorGuard's theory that one of its competitors in the virtual private network industry, Defendant Tefincom S.A. ("NordVPN"), acquired nebulous "confidential and trade secret information" from a separate defendant, Collective 7, Inc. ("Collective 7").[1] Defendant Collective 7 was allegedly previously engaged in a business relationship with TorGuard. Inexplicably, TorGuard is under the incorrect impression that NordVPN owns or controls Collective 7, therefore, NordVPN somehow also acquired this "trade secret information." Equipped with this purported "trade secret information," NordVPN allegedly threatened TorGuard that it would release the "information" unless TorGuard convinced its third-party affiliate to remove negative posts and videos about NordVPN on YouTube.

Ultimately, the Complaint is founded upon speculative allegations, untethered to factual support and incorrect legal assertions. TorGuard's Complaint fails to meet the basic pleading standards for any of its three purported causes of action and should be dismissed.

First, TorGuard's claim for violation of the Florida Computer Abuse and Data Recovery Act fails for two distinct and equally sufficient reasons. As an initial matter, the claim is preempted by the Florida Uniform Trade Secrets Act because it concerns trade secret(s) and is premised on the same allegations as the Florida Uniform Trade

---

[1] This is not TorGuard's first lawsuit against NordVPN. TorGuard filed its original lawsuit on May 24, 2019 in this Court, Case No. 6:19-cv-978. That case was assigned to Judge Mendoza, who dismissed the action without prejudice based on TorGuard's repeated failure to adequately allege diversity citizenship of the parties. *See* ECF No. 26. TorGuard then filed this lawsuit without identifying its first lawsuit on its Civil Case Cover Sheet, even though the allegations are nearly identical.

Secrets Act claim (Count II). Second, the boilerplate allegations assert no wrongdoing against NordVPN. Rather than alleging that NordVPN accessed TorGuard's computer systems without authorization, TorGuard instead alleges that defendant Collective 7, which allegedly had authorized access to its systems, accessed the "trade secret information." There are no allegations that NordVPN wrongfully accessed the information. There is no allegation of vicarious liability, nor could there be, that would put an entirely unrelated entity on the hook for access gained by a different defendant. TorGuard cannot hold NordVPN liable for the acts of a separate party, let alone acts that do not violate the statute at issue.

Second, to state a claim for violation of the Florida Uniform Trade Secrets Act, TorGuard cannot simply claim one or more trade secrets in conclusory terms, *i.e.*, "confidential and trade secret information." It must allege and describe the information in which it claims trade secret protection with "reasonable particularity." Nowhere in its Complaint (nor the three complaints it filed in Case No.6:19-cv-978) does TorGuard meet this standard. This failure alone is fatal to its claim. But the claim fails for the additional reason that TorGuard fails to allege the additional necessary element that it took any steps to safeguard its purported trade secret.

Finally, TorGuard cannot maintain its claim for Tortious Interference with Business Relations for two separate and equally sufficient reasons. First, as is the case for the Florida Computer Abuse and Data Recovery Act claim, the allegations fall squarely within the preemption provisions of the Florida Uniform Trade Secrets Act. Second, TorGuard does not identify any business relationship(s) with which NordVPN

allegedly interfered, instead relying on boilerplate allegations of relationships generally. It is well-settled Florida law that such generalized, boilerplate allegations are insufficient to state a claim for tortious interference with business relationships.

For the aforementioned reasons, more fully discussed below, NordVPN urges the Court to dismiss TorGuard's claims with prejudice.

## II. ALLEGATIONS IN COMPLAINT

TorGuard and NordVPN are both providers of VPN services and therefore competitors in the VPN industry. (Compl., ¶ 1). Collective 7 is allegedly a hosting company that TorGuard used as a service provider in 2018, but that relationship was terminated at some unidentified time. (*Id.*, ¶¶ 3, 29).[2] As part of the alleged business relationship between TorGuard and Collective 7, "Collective 7 gained access to certain confidential and trade secret information owned by TorGuard." (*Id*, ¶ 16).

TorGuard does not allege a description of its purported trade secret(s) (including whether singular or plural) other than to say it is "confidential and trade secret information." Indeed, TorGuard descriptively defines its "confidential and trade secret information" as "Information." (*Id.*, ¶ 27). TorGuard likewise does not allege that it took any steps to maintain the secrecy of its "confidential and trade secret information" during the time period that TorGuard used Collective 7's services. There are also no allegations that TorGuard took any such steps even *after* the termination of its business relationship with Collective 7. (*See generally* Compl.).

[2] In its first lawsuit, TorGuard initially alleged that NordVPN acquired this "trade secret information" from a defendant named C-Seven Media, Inc., which TorGuard incorrectly alleged NordVPN owned or controlled. (*See* Complaint, Dkt. No. 3, from Case No. 6:19-cv-978). TorGuard subsequently filed a First Amended Complaint in that action (Dkt. 6) and its Second Amended Complaint (Dkt. 18) naming Collective 7, Inc., and deleting C-Seven Media, Inc.

Based solely on "information and belief," TorGuard alleges that Collective 7 is "affiliated" with NordVPN and that NordVPN "obtained certain of TorGuard's confidential and trade secret information from Collective 7." (*Id.*, ¶¶ 3 & 19). TorGuard further alleges that NordVPN "confronted and threatened TorGuard with public disclosure of this [unidentified trade secret] information unless TorGuard took certain actions to silence criticisms of NordVPN." (*Id.*, ¶ 20). According to TorGuard, on May 17, 2019, "an unknown individual appeared unannounced at the personal residence of a TorGuard contractor, asking to speak with him about his relationship with TorGuard and the VPN industry." (*Id.*, ¶ 21). Then, "the same TorGuard contractor received unsolicited correspondence from an employee at NordVPN" (*id.*, ¶ 22) where, allegedly, among other things, "the representative of NordVPN then told TorGuard's representative that it wanted a 'gentleman's agreement' whereby NordVPN would not publish TorGuard's confidential and trade secret information . . . if TorGuard persuaded (through whatever means) this individual to remove negative YouTube postings." (*Id.*, ¶ 25)

TorGuard claims that it "began to suffer service outages on its website, due to distributed denial of service attacked (frequently referred to as 'DDoS' attacks)." (*Id.*, ¶ 32). It claims that these DDoS attacks "were based upon the Information—the nature and way they occurred and were timed made it patently obvious that the attacker had obtained the Information from Collective 7 and was utilizing it as a roadmap for DDoS attacks." (*Id.*, ¶ 35). These allegations are less "patently obvious" to NordVPN, as it is unclear how the nebulous "Information" Collective 7 obtained leads to an unrelated entity, NordVPN, using that information in a DDoS attack. The dots are never connected.

Instead, TorGuard simply reaches the conclusion without any facts.

Based on these allegations, TorGuard brings three purported claims against NordVPN for violation of the Florida Computer Abuse and Data Recovery Act ("CADRA"), violation of the Florida Uniform Trade Secrets Act ("FUTSA"), and Tortious Interference with Business Relationships.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. ARGUMENT

### A. TORGUARD'S FUTSA CLAIM FAILS

#### 1. TorGuard Fails to Describe Any Trade Secret, Yet Alone One With Reasonable Particularity

In order to maintain its claim for violations of FUTSA, TorGuard "bears the dual burden of describing the alleged trade secret information and also showing that it has

taken reasonable steps to protect this secrecy." *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1287 (S.D. Fla. 2007). As to the first element, it is well-settled law that a party alleging the misappropriation of a trade secret must describe, with "reasonable particularity," the trade secret at issue. *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1286 (S.D. Fla. 2010); *Taxinet, Corp. v. Leon*, 2018 WL 3405243 at *3 (S.D. Fla. July 12, 2018) (alleged trade secrets not alleged with reasonable particularity where the "allegations only indicate 'broad categories of information'").

Here, TorGuard unhelpfully defined the term "Information" to refer to its purported trade secret(s). (*See* Compl. ¶ 27). On its face, this definition contains no actual description of any trade secret at issue. What TorGuard has vaguely described in its Complaint does not rise to the requisite "reasonable particularity" standard that Florida law requires, and it leaves the parties and the Court in the dark about any actual "trade secret(s)" at issue.

No other allegations in the Complaint save this fatal defect. In each of the 12 paragraphs of the Complaint where the "Information" is referenced, the allegations contain no description of an actual trade secret. (*Id.*, ¶¶ 28, 31, 35, 37, 41, 42, 45, 48-50, 52 & 53). In each of the eight paragraphs of the Complaint where TorGuard generically refers to its "confidential and trade secret information," TorGuard similarly fails to describe any actual trade secret(s). (*Id.*, ¶¶ 3, 4, 16, 19, 22, & 25-27). Because TorGuard fails to allege with reasonable particularity the most basic element to a claim under the

FUTSA, the Motion to Dismiss should be granted.[3]

### 2. TorGuard Fails to Allege that It Took Steps to Protect the Privacy of Its Purported Trade Secret

TorGuard fails to state a claim under FUTSA for the additional and independent reason that it fails to allege that it took any steps to protect the privacy of its purported trade secret. There are two dispositive reasons.

*First*, TorGuard only alleges in conclusory fashion—merely parroting the text of Fla. Stat. 688.002(4)(b)—that "TorGuard has at all times relevant to this action taken reasonable efforts to protect the secrecy of the Information." (Compl., ¶ 49). But pursuant to well established law, such boilerplate statements do not state a claim for relief under the pleading standards of Rule 8.[4] *See Taxinet, supra,* at *3 (dismissing claim where plaintiff "only conclusively states it 'used and continues to use reasonable efforts

---

[3] TorGuard likewise should not be granted leave to amend. It has publicly admitted that this case does not concern the alleged threatened disclosure of any "trade secret," but rather, security concerns. More specifically, TorGuard is an active blogger with a blog post entitled "When Bug Bounties Border on Blackmail." (*See* https://torguard.net/blog/when-bug-bounties-border-on-blackmail/). In that blog post, TorGuard contradicts these allegations by stating that NordVPN informed it of a "*security concern*[]" and that "[t]he report noted that our . . . install scripts had recently became open in error." (emphasis added). While NordVPN disputes that it made any threats to TorGuard, TorGuard goes on to state in its blog that NordVPN threatened to reveal this "damaging information about TorGuard" and its security flaw, not any "confidential and trade secret information." Thus, this lawsuit does not concern NordVPN impermissibly obtaining or acquiring TorGuard's alleged "trade secrets" from Collective 7. This lawsuit does not concern NordVPN even threatening to disclose any such trade secrets. Rather, this lawsuit concerns NordVPN privately disclosing to TorGuard a *security vulnerability* which it brought to TorGuard's attention. No leave to amend can cure this fundamental defect in, and likely improper motives behind, the Complaint.

[4] TorGuard admitted in its same blog post referenced above that it did not protect this alleged trade secret. Specifically, the post states "TorGuard's network team immediately verified *this server was left open during upgrades*. . . [and] the cert[ificate] and server in question *has not been used for installs since January 2018 and is not in production on the TorGuard network*." For this same reason, it's hard to imagine how TorGuard could possibly claim that this server and its certificate are "trade secrets" when they were left open to the public and not used it in over *18 months.*

to maintain the secrecy of its trade secrets.'"). *Twombly, supra,* 550 U.S. at 555 (pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

*Second*, TorGuard alleges that it knowingly disclosed its trade secret(s) to Collective 7 without safeguarding the information. This is fatal to its claim because "disclosing the information to others who are under no obligations to protect the confidentiality of the information defeats any claim that the information is a trade secret." *M.C. Dean, Inc. v. City of Miami Beach, Fla.*, 199 F. Supp. 3d 1349, 1353 (S.D. Fla. 2016). Specifically, TorGuard alleges that it had a "business relationship" with Collective 7, wherein Collective 7 "gained access to certain confidential and trade secret information owned by TorGuard and employed by TorGuard in providing its services." (Compl.,¶ 16). In other words, TorGuard concedes that it gave Collective 7 access to the alleged trade secret. And more importantly, there is not a single allegation that TorGuard took any steps to protect that information, such as through a confidentiality or other agreement to keep that information safeguarded. Worse, TorGuard does not allege that it took such efforts to safeguard its information even *after* it ended its relationship with Collective 7. For this reason alone, the Motion should be granted as to this claim. *See Temurian v. Piccolo*, 2019 WL 1763022 at *11 (S.D. Fla. April 22, 2019) (dismissing FUTSA claim for giving defendant access to alleged "trade secrets" and not alleging any efforts to keep such data confidential, such as through a confidentiality agreement); *City of Miami Beach, supra,* 199 F. Supp. 3d at 1356-57 (dismissing FUTSA claim when

plaintiff gave vendor access to the trade secret and did not "allege it took any steps to maintain the secrecy of its information. . . whether by contract or by any other means").

**B. TORGUARD'S CADRA CLAIM FAILS**

**1. The Claim Is Preempted by the FUTSA**

TorGuard's purported cause of action for violation of the Florida Computer Abuse and Data Recovery Act ("CADRA") fails to state a claim as a matter of law because it is preempted by the FUTSA. As stated in the FUTSA, "[e]xcept as provided in subsection (2), [the FUTSA] displace[s] conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." Fl. St. § 688.008(1). Court have interpreted this language to "preclude[] common law claims based on a theory of misappropriation of trade secrets. Thus, the issue becomes whether allegations of trade secret misappropriation alone comprise the underlying wrong; if so, the cause of action is barred by § 688.008." *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335-36 (S.D. Fla. 2002); *ThinkLite LLC v. TLG Solutions, LLC*, 2017 WL 5972888, at *4 (S.D. Fla. Jan. 31, 2017) ("To pursue claims for additional tort causes of action where there are claims for misappropriation of a trade secret, there must be material distinctions between the allegations comprising the additional torts and the allegations supporting the FUTSA claim. In other words, the allegations must be separate and distinct.").

Here, there is no material distinction between the FUTSA and CADRA claims. In both claims, TorGuard "realleges and incorporates the allegations contained in paragraphs 1 through 39 above as if herein fully set forth." (*compare* Compl., ¶ 40 *to* Compl., ¶ 47). Apart from each claim parroting in boilerplate fashion the respective

statutory text of the FUTSA and CADRA, they both rely upon the allegations that Defendants allegedly accessed TorGuard's "Information" without authorization. "Information" is a defined term that is used identically in both FUTSA and CADRA claims. As to the CADRA claim, TorGuard alleges that "Defendants. . . without authorization[] accessed the protected computer systems on which TorGuard had installed its Information." (*Id.*., ¶ 42). And as to the FUTSA claim, TorGuard alleges in nearly identical fashion that "Collective 7 obtained and disclosed to NordVPN the Information without consent of TorGuard and did so through improper means – specifically, by exceeding their authorization to access such Information." (*Id.*, ¶ 50). Because the CADRA claim parallels the FUTSA claim and the two are not materially distinct, it is preempted as a matter law. *See e.g. Pelfrey v. Mahaffy*, 2018 WL 3110797 at *6 (S.D. Fla. Feb. 7, 2018) (preempting CADRA claim because "[t]hese are the same underlying allegations of misconduct as alleged" in the FUTSA claim).

**2. There Are No Allegations of Any Wrongdoing By NordVPN**

Even assuming, *arguendo*, that the CADRA claim was not preempted, the allegations still fail to state a claim for relief under both Subsections (1) and (3) of Section 668.803.[5] CADRA provides in relevant part that "[a] person who knowingly and with intent to cause harm or loss" is liable when that person either "(1) obtains information from a protected computer without authorization" or "(3) traffics in any technological access barrier through which access to a protected computer may be obtained without authorization." Fla. Stat. Ann § 668.803(1) & (3).

[5] The Complaint makes no reference to any alleged violation pursuant to Subpart (2) of Section 668.803.

With respect to Subsection (1), there are no allegations that NordVPN obtained any information from a protected computer, let alone without authorization. Fla. Stat. Ann. § 668.803(1). Rather, the allegations unequivocally demonstrate NordVPN had no involvement with obtaining any "Information." Instead, it was co-defendant Collective 7 who, through its business relationship with TorGuard, accessed TorGuard's computers *with* authorization:

- "In 2018, TorGuard contracted with Collective 7. . . As part of this business relationship, Collective 7 gained access to certain confidential and trade secret information owned by TorGuard." (Compl., ¶ 16).
- "Collective 7 . . . obtained this information during the time TorGuard utilized Collective 7 as a service provider." (*Id.*, ¶ 4).
- "Collective 7 obtained and disclosed to NordVPN the Information. . . by exceeding their authorization to access such Information. . . Collective 7 obtained the Information by improper means." (*Id.*, ¶ 50).

Because there are no allegations directed at NordVPN, the Complaint fails to state a claim for relief against NordVPN.

TorGuard's remaining allegation invoking Subsection (3) does not fare any better because there are no allegations that NordVPN "trafick[ed] in any technological access barrier." Fla. Stat. Ann § 668.803(3). A "technological access barrier" is simply a password. *See* Fla. Ann. Stat. § 668.802(7) (defining the term as "a password, security code, token, key fob, access device, or similar measure."). Similar to the rest of the Complaint, TorGuard merely alleges in conclusory fashion that "Defendants further

trafficked technological access barriers." (Compl.., ¶ 43). But this conclusory statement is insufficient to state a claim as a matter of law. Quite the opposite of NordVPN accessing a technological barrier, the allegations of the Complaint overwhelmingly state that the *only* means through which the "Information" was allegedly obtained was through Collective 7 during its business relationship with TorGuard. Tellingly, apart from Paragraphs 41 & 43, never again does the Complaint reference any "technological access barrier" or a password. Thus, there is no basis to hold NordVPN liable for using any password to gain access to TorGuard's computers. As such, the Motion should be granted, and the claim dismissed.

## C. TORGUARD FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

### 1. The Claim is Preempted by the FUTSA

At the outset, the allegations supporting the third claim for Tortious Interference with Business Relationships are boilerplate and devoid of any facts. (Compl., ¶¶ 55-60). But even if the Court were to assume that such conclusory allegations state a plausible claim for relief (which they do not), it appears that the cause of action is premised on the alleged DDoS attacks. As explained by TorGuard, "[t]he DDoS attacks directed against TorGuard were *based upon the Information*—the nature and way they occurred and were timed made it patently obvious that the attacker had obtained the Information from Collective 7 and was utilizing it as a roadmap for DDoS attacks." (*Id.*, ¶ 35) (emphasis added). Further, "these coordinated DDoS attacks . . . were only possible due to Defendants' *access to and sharing of the Information*." (*Id.*, ¶ 37) (emphasis added). In other words, absent the alleged wrongful conversion of TorGuard's "Information," by

Collective 7, there would not have been any DDoS attacks. This reality causes the claim to fall squarely within preemption provisions of the FUTSA, and accordingly, should be dismissed with prejudice. *See Palfrey, supra*, 2018 WL 3110797 at *4 (dismissing tortious interference claim as preempted because it was "factually indistinguishable from the Misappropriation of Trade Secrets Claim").

**2. The Complaint Fails to Adequately Plead A Tortious Interference Claim**

Even assuming, *arguendo*, that the claim was not preempted, TorGuard still fails to allege adequately the elements of the tortious interference cause of action. Under Florida law, "[t]he elements of tortious interference with a business relationship are '(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.' " *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015). Critically, "no cause of action exists for tortious interference with a business's relationship to the community at large" and "the plaintiff must prove a business relationship with identifiable customers." *Coach Services, Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (*citing Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So.2d 821 (Fla. 1996) *and Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994).

Here, each element of the claim is pleaded in conclusory fashion and it is therefore subject to dismissal. *Iqbal, supra,* 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Moreover, as it relates to the first element of the claim, the Complaint fails to identify a single business relationship and instead impermissibly refers to "clients and potential clients" (Compl., ¶ 37) and "business relationships with its potential and current customers." (*Id.*, ¶ 59). Such allegations do not state a claim for relief. *Coach, supra,* is instructive. The defendant in that case filed a similar claim as TorGuard's in which it alleged that the first element was satisfied because "it was planning to sell its sunglasses to 'various customers.'" 752 F. Supp. 2d at 1273. But the Court found such allegations to be "too vague and abstract to satisfy the first element of a tortious interference claim," explaining that such a "bare allegation. . . lacks any specificity and is an example of threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, which do not suffice." *Id.* (*quoting Iqbal*, *supra,* 556 U.S. at 678). Florida law requires more than this type of vague and broad assertion, and the Motion should be granted. *See EMP Industries Inc. v. Keco, Inc.*, 2017 WL 10899974 at * 2 (M.D. Fla. Nov. 2, 2017) (allegation that plaintiff has "business relationships with customers, potential customers, and vendors" insufficient to state a claim for relief because "the operative complaint fails to identify any of the current or prospective customer relationships."); *Cornell Pump Co. v. Thompson Pump and Manufacturing Co.*, 2018 WL 3827249 at *9 (M.D. Fla. May 18, 2018) (dismissing tortious interference claim where plaintiff alleged that defendants interfered with "existing and prospective contractual and/or business relationships with customers and distributors").

## V. CONCLUSION

For the foregoing reasons, NordVPN respectfully requests that the Court grant its Motion to Dismiss and dismiss the Complaint in its entirety with prejudice.

DATED: July 9, 2019

Respectfully submitted,

By: /s/ *Jeffrey H. Reeves*

Jeffrey H. Reeves (admitted *pro hac vice*)
Cheryl Priest Ainsworth
E-mail: jreeves@tocounsel.com
THEODORA ORINGHER PC
535 Anton Blvd., Ninth Floor
Costa Mesa, CA 92626
Telephone: 714-549-6123

Ryan T. Santurri
Florida Bar No. 15698
rsanturri@allendyer.com
ALLEN, DYER, DOPPELT
& GILCHRIST, P.A.
255 South Orange Avenue, Suite 1401
Orlando, FL 32801
Telephone: (407) 841-2330
Facsimile: (407) 841-2343

Attorneys for Defendant
*TEFINCOM S.A. D/B/A NORDVPN*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 9, 2019, I electronically filed the foregoing using the Management/Electronic Case Filing ("CM/ECF") system, which will send a Notice of Electronic Filing to the following CM/ECF participants:

Adam C. Losey, Esq.
Karen L. Middlekauff, Esq.
Losey PLLC
1420 Edgewater Drive
Orlando, FL 32804-6353
alosey@losey.law
kmiddlekauff@losey.law

*/s/ Ryan T. Santurri*
Ryan T. Santurri
Florida Bar No. 15698