# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

VPNETWORKS, LLC (d/b/a TorGuard),

      Plaintiff,

vs.                                                  Case No:   6:19-cv-1179-PGB-LRH

TEFINCOM, S.A. (d/b/a NordVPN) and
COLLECTIVE 7, INC.

      Defendants.

_____/

## NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY ACTION

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.     INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF FACTS ........................................................................ 2

III.   LEGAL STANDARD .............................................................................. 3

IV.   TORGUARD'S CLAIMS MUST BE ARBITRATED ............................ 4

     A.    There Is A Valid Agreement Between TorGuard and NordVPN to Arbitrate this Dispute ..................................................................... 4

     B.    The Arbitrator appointed by the AAA, and Not the Court, Has the Authority to Determine Whether the Dispute is Arbitrable ......................... 6

          1.    The Plain Language of the Arbitration Clause Delegates to the AAA Any Disputes Concerning the Validity of the Agreement ......................................................................... 6

          2.    The Arbitration Clause Incorporates the Rules of AAA, Which In Turn Require the Arbitrator to Determine the Issue of Arbitrability .................................................................. 7

          3.    The Instant Action Falls within the Scope of the Arbitration Provision's Scope ............................................................. 9

          4.    NordVPN Has Not Waived Its Right to Arbitrate, And Even if It Did, TorGuard Cannot Establish Prejudice .............................. 11

          5.    TorGuard's Separate Choice of Law Clause Does Not Save It From Arbitration ............................................................ 14

V.    CONCLUSION ..................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Bachewicz v. JetSmarter, Inc.*,
    2019 WL 1900332 (S.D. Fla. Apr. 29, 2019) .............................................................. 7

*Dockeray v. Carnival Corp.*,
    724 F. Supp. 2d 1216 (S.D. Fla. 2010) ...................................................................... 12

*Fleetwood Enter., Inc. v. Gaskamp*,
    280 F.3d 1069 (5th Cir. 2002) .................................................................................... 4

*Fuentes v. Security Forever LLC*,
    2017 WL 7792708 (S.D. Fla. May 25, 2017) ............................................................ 13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ........................................................................................... 4, 5, 6

*Hodgson v. Royal Caribbean Cruises, Ltd.*,
    706 F. Supp. 2d 1248 (S.D. Fla. 2009) ................................................................ 12, 13

*Ivax Corp. v. B. Braun of Am., Inc.*,
    286 F.3d 1309 (11th Cir. 2002) ................................................................................ 11

*JPay, Inc. v. Kopbel*,
    904 F.3d 923 (11th Cir. 2018) .................................................................................... 8

*Klay v. Pacificare Health Sys., Inc.*,
    389 F.3d 1191 (11th Cir. 2004) .................................................................................. 3

*Lynch v. Solid Waste Haulers Florida, LLC*,
    15 So.3d 919 (First Dist. Ct. App. Fla. 2009) .......................................................... 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ................................................................................................ 3, 4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1, 103 S. Ct. 927 (1983) ........................................................................ 13, 14

*Parnell v. CashCall, Inc.*,
    804 F.3d 1142 (11th Cir. 2015) ............................................................................... 3, 4

*Reyes v. Claria Life & Health Ins. Co.*,
    190 So.3d 154 (Third Dist. Fla. 2016) .................................................................. 14, 15

*Stone v. E.F. Hutton & Co.*,
    898 F.2d 1542 (11th Cir. 1990) ...................................................................................... 11

*Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*,
    432 F.3d 1327 (2005) .............................................................................................. 9, 10

*Wilson v. Par Builders II, Inc.*,
    879 F. Supp. 1187 (M.D. Fla. 1995) .............................................................................. 12

*Ytech 180 Units Miami Beach Investments LLC v. Certain Underwriters at Lloyd's, London*,
    359 F. Supp. 3d 1253 (S.D. Fla. 2019) ...................................................................... 6, 7

## Statutes

9 U.S.C. § 2 ......................................................................................................................... 3

9 U.S.C. § 3 ......................................................................................................................... 4

## I.  <u>INTRODUCTION</u>

Defendant NordVPN and Plaintiff TorGuard are both providers of virtual private network services.  As part of its competitive intelligence to better understand the industry, NordVPN signs up for other VPN providers' services.  On September 3, 2018, long before TorGuard filing this suit, NordVPN signed up for TorGuard's services.  As part of that process, NordVPN accepted TorGuard's Terms of Services, as published on TorGuard's website.  By accepting TorGuard's terms, NordVPN and TorGuard entered into a broad, but binding arbitration agreement, drafted by TorGuard and accepted by NordVPN, requiring the Parties to arbitrate "any legal claim or dispute between them . . . whether related to this agreement or otherwise" before the American Arbitration Association ("AAA").  Through this Motion, NordVPN seeks to enforce this binding arbitration clause and requests an order from this Court compelling this dispute to arbitration and staying the court proceedings.

Additionally, the arbitration clause at issue delegates to AAA the power to decide whether the dispute is arbitrable in the first instance.  Thus, the Court need not decide whether the dispute invokes the arbitration clause.  That step has been reserved for AAA pursuant to (i) the plain language of the arbitration clause and (ii) TorGuard incorporating AAA's rules into its arbitration clause – rules which give the arbitrator the power to rule on jurisdiction.

While TorGuard may be tempted to argue against the authority of the arbitrator to decide arbitrability (despite the fact it was TorGuard which chose to incorporate AAA rules governing same), NordVPN has still established that this dispute falls within the scope of the arbitration clause and that NordVPN has not waived its right to arbitrate.

Finally, this Motion to Compel Arbitration presents the rare circumstance where a customer, NordVPN, seeks to enforce the arbitration provision of a service provider, TorGuard, rather than the other way around.  NordVPN seeks to enforce the arbitration agreement TorGuard drafted and which TorGuard requires its customers to accept (indeed, TorGuard's terms of service state that anyone who merely *visits* its website is

1

bound to its Terms of Service).  Thus, as the drafter of the arbitration clause, TorGuard cannot in good faith argue that its own arbitration clause is inapplicable to the very category of dispute contemplated and encompassed by its mandatory clause.  As discussed more in depth below, the parties entered into a valid agreement to arbitrate this dispute, and the matter should therefore be ordered to arbitration and this case should be stayed.

## II.    <u>STATEMENT OF FACTS</u>

When a customer signs up for TorGuard's services or even visits TorGuard's website, it is required to accept TorGuard's Terms of Services.  (*See* Ainsworth Decl., Ex. C (the "Terms of Service") at 1) ("By visiting TorGuard.net's website or using the provided service. . . The Client fully agrees and understands the terms and conditions provided herein[.]  By entering our website and/or purchasing services, The Client agrees to be bound by these Terms and conditions.").[1]  As it relates to this Motion, TorGuard has a broad arbitration clause (the "Arbitration Clause") which not only requires all disputes related to the agreement *or otherwise* to be arbitrated, but also delegates to the Arbitrator (not the Court) the power to decide the validity of the agreement, as emphasized below:

**ARBITRATION**

The Parties agree that any legal claim or dispute between them or against any agent, employee, successor, or assign of the other, *whether related to this agreement or otherwise*, and any claim or dispute related to this agreement or the relationship or duties contemplated under this contract, *including the validity of this arbitration clause*, *shall be resolved by binding arbitration by the American Arbitration Association* (or name other firm providing arbitration services, i.e., National Arbitration Forum), *under the Arbitration Rules then in effect*. Any award of the arbitrator(s)

---

[1] TorGuard's Terms of Service are available online at https://torguard.net/terms.php.

may be entered as a judgment in any court of competent jurisdiction. . .

This agreement shall be interpreted under the Federal Arbitration Act.

(Terms of Service at 7).

NordVPN signs up for other VPN providers' services so it can better understand the products, customers, competitors, and other aspects of the VPN industry to make better strategic decisions for its organization.  (Okmanas Decl,., ¶ 4.).  On September 3, 2018—nearly eight months before this lawsuit was filed—one of NordVPN's agents signed up for TorGuard's services.  (*Id.*, ¶¶ 5-6).  This agent did so on NordVPN's behalf, for NordVPN's business purposes, and with NordVPN's authorization.  (*Id.*, ¶ 6).  TorGuard, in turn, accepted the agent's payment, processed the payment, and granted this agent access to TorGuard's services.  (*Id.*, Ex. A).  As a result, NordVPN and TorGuard entered into a legally binding agreement that requires TorGuard to arbitrate any disputes between them.

Notably, TorGuard served Requests for Admission on NordVPN, asking it to admit both that its agents have signed up as a customer of TorGuard, and that NordVPN agreed to TorGuard's Terms of Service.  (Ainswerth Decl., ¶ 2, Ex. A at 7).  NordVPN admitted both of these requests.  (*Id.*, ¶ 3, Ex. B at 11).

## III.  <u>LEGAL STANDARD</u>

There is a strong presumption in favor of arbitration.  Under the Federal Arbitration Act ("FAA"), a written arbitration provision in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption–'a national policy'–in favor of arbitration."  *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015).

Courts conduct a two-step inquiry to decide whether the parties must submit to arbitration.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *Klay v. Pacificare Health Sys., Inc.*, 389 F.3d 1191, 1200 (11th Cir. 2004).  The

first step is to decide whether the parties agreed to arbitrate the dispute. *Mitsubishi Motors Corp. supra*, 473 U.S. at 626.   "This determination depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Fleetwood Enter., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).  If the court finds that the parties agreed to arbitrate, it must then determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors Corp., supra*, 473 U.S. at 628.

"Importantly, parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable. The Supreme Court has upheld these so-called 'delegation provisions' as valid." *Parnell, supra,* 804 F.3d at 1146.  "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract" even if the Court believes that the party's argument in favor of arbitration is "wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).

Finally, the FAA mandates that district courts stay actions pending arbitration.  9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall . . . stay the trial of the action. . .").

## IV.    TORGUARD'S CLAIMS MUST BE ARBITRATED

### A.    There Is A Valid Agreement Between TorGuard and NordVPN to Arbitrate this Dispute

TorGuard and NordVPN entered into valid arbitration agreement pursuant to TorGuard's Terms of Service.  Those Terms of Service include a broadly worded clause entitled "Arbitration," and provides as follows:

**ARBITRATION**

The Parties agree that any legal claim or dispute between them or against

any agent, employee, successor, or assign of the other, *whether related to this agreement or otherwise*, and any claim or dispute related to this agreement or the relationship or duties contemplated under this contract, *including the validity of this arbitration clause*, *shall be resolved by binding arbitration by the American Arbitration Association* (or name other firm providing arbitration services, i.e., National Arbitration Forum), under the Arbitration Rules then in effect. Any award of the arbitrator(s) may be entered as a judgment in any court of competent jurisdiction. . . This agreement shall be interpreted under the Federal Arbitration Act.

(Terms of Service at 7).

There can be no doubt that TorGuard voluntarily agreed to be bound by its own clear and conspicuous arbitration clause that it drafted and to which it required NordVPN to consent. Indeed, if TorGuard expects its customers, and even people who merely visit its website,[2] to be bound by its arbitration provision, then TorGuard cannot disavow it for itself. NordVPN also agreed to be bound by TorGuard's Terms of Service. TorGuard knows this because TorGuard propounded Requests for Admission on NordVPN, asking it to admit that it signed up as a customer of TorGuard and consented to its Terms of Service. (Ainswerth Decl., Ex. A at 7). NordVPN admitted both of these facts. (*Id.*, Ex. B at 11). More specifically, one of NordVPN's agents signed up for service with NordVPN's competitors to better understand the industry and competition. (Okmanas

---

[2] Demonstrating how broad the Arbitration Clause is, the Terms of Service bind anyone who merely visits TorGuard's website:

> *By visiting TorGuard.net's website* or using the provided service (Including but not limited to all services and pages available on TorGuard.net) *The Client fully agrees and understands the terms and conditions provided herein*, TorGuard.net's Privacy Policy, DMCA (Digital Millennium Copyright Act) and all future modifications or amendments to this agreement. *By entering our website and/or purchasing services, The Client agrees to be bound by these Terms and conditions.*

(Terms of Service at 1).

Decl., ¶¶ 4-6).   On September 3, 2018, NordVPN's agent, at the direction and with authority from NordVPN, signed up as a customer of TorGuard for this business purpose. (*Id.*, ¶¶ 5-6).   Thus, there can be no doubt that NordVPN voluntarily assented to TorGuard's Terms of Service and agreed to be bound by the Arbitration Clause. Accordingly, there is a valid agreement between NordVPN and TorGuard to arbitrate any disputes.[3]

B.   **The Arbitrator appointed by the AAA, and Not the Court, Has the Authority to Determine Whether the Dispute is Arbitrable**

1.   **The Plain Language of the Arbitration Clause Delegates to the AAA Any Disputes Concerning the Validity of the Agreement**

Not only is there a valid agreement between TorGuard and NordVPN to arbitrate this dispute, the parties have likewise delegated to the AAA the responsibility of determining whether the dispute is arbitrable in the first instance.   As the Supreme Court recently instructed in *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019), when a valid agreement exists and the agreement delegates the arbitrability issue to an arbitrator, the Court may not decide the arbitrability issue.   "The [Arbitration] Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* at 527.   Thus, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Id.* at 528; *see also Ytech 180 Units Miami Beach Investments LLC v. Certain Underwriters at Lloyd's, London*, 359 F. Supp. 3d 1253, 1264 (S.D. Fla. 2019) (parties to a contract "may agree to have an arbitrator, rather than a court, decide issues of arbitrability, including whether an arbitration agreement is valid and/or enforceable").

Here, the plain language of the Arbitration Clause delegates to AAA the sole

---

[3] To the extent TorGuard challenges that it entered into a binding arbitration agreement with NordVPN based on NordVPN's invoice stating the customer is "Anonymous," that argument has no merit.   It was TorGuard who allowed NordVPN to anonymous subscribe to its service, and TorGuard accepted the payment.

authority to determine its validity:  "The Parties agree that any legal claim or dispute between them. . . *including the validity of this arbitration clause*, shall be resolved by binding arbitration by the American Arbitration Association[.]"  (Terms of Service at 7) (emphasis added).

Given that NordVPN is seeking to enforce TorGuard's own Terms of Service and Arbitration Clause, TorGuard cannot in good faith challenge its own delegation clause that it drafted and chose to be bound by.  Thus, by TorGuard's own admission, any dispute it has with NordVPN must be resolved through arbitration, including whether the arbitration clause is valid.

This delegation clause is remarkably similar to the delegation clause at issue in *Ytech*, which required that "all matters in difference between [the parties]. . . in relation to this insurance, *including its formation and validity*. . . shall be referred to an Arbitration Tribunal."  *Ytech, supra,* 359 F. Supp. 3d at 1265 (emphasis added).  In *Ytech*, the Court found that this language meant "the only reasonable interpretation is that the Parties clearly and unmistakably agreed to give an arbitrator exclusive authority to resolve any dispute relating to the Policy."  *Id.*; *see also Bachewicz v. JetSmarter, Inc.*, 2019 WL 1900332 at *3 (S.D. Fla. Apr. 29, 2019) (holding the same for an arbitration clause that required in relevant part that "any claim or dispute between the parties. . . *including the validity of this clause*, shall be resolved exclusively by binding arbitration") (emphasis added).

Thus, because the parties here agreed that "the validity of this arbitration clause [] shall be resolved by binding arbitration by the American Arbitration Association" (Terms of Service at 7), the matter should be ordered to arbitration for the AAA to decide the issue of arbitrability.

2. **The Arbitration Clause Incorporates the Rules of AAA, Which In Turn Require the Arbitrator to Determine the Issue of Arbitrability**

Second, and in addition to the plain language of the Terms of Service mandating

that AAA decide the arbitrability issue, the Eleventh Circuit has held that when parties incorporate the Rules of AAA into their arbitration clause, it further evidences a clear and unmistakable intent to delegate arbitrability to AAA. *JPay, Inc. v. Kopbel*, 904 F.3d 923, 938-38 (11th Cir. 2018) (when terms of service "expressly incorporate. . . AAA rules, . . . and unmistakably give the arbitrator power to rule on his own jurisdiction," then the parties have "delegat[ed] questions of arbitrability to the arbitrator"). Here, TorGuard's Arbitration Clause does exactly this:

> The Parties agree that any legal claim or dispute between them . . . **including the validity of this arbitration clause, shall be resolved by binding arbitration by the American Arbitration Association** (or name other firm providing arbitration services, i.e., National Arbitration Forum), **under the Arbitration Rules then in effect.**

(Terms of Service at 7) (emphasis added).

In other words, the Arbitration Clause requires that the AAA resolve any disputes—including disputes about the validity of the Arbitration Clause—under AAA's current rules. Turning to those rules, there are two sets in effect: one for consumer disputes and one for commercial disputes. Both rules are identical and state "*[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.*" (*See* Commercial Rules, Rule R-7(a)[4]; *see also* Consumer Rules, Rule R-14(a)[5]) (emphasis added). Thus, each set of AAA's rules gives the arbitrator "the power to rule on his or her own jurisdiction." *Id.* Therefore, this language of the Arbitration Clause confirms that the Parties agreed to delegate the issue of arbitrability to AAA. *See JPay, supra,* 904 F.3d at 936 (finding "a clear and unmistakable delegation of questions of arbitrability to an arbitrator. . . confirmed by the agreement's subsequent reference to 'the rules of the [AAA]' in general

---

[4] https://www.adr.org/sites/default/files/Commercial%20Rules.pdf
[5] https://www.adr.org/sites/default/files/Consumer_Rules_Web_0.pdf

terms"); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327 (2005) ("the parties have agreed that the arbitrator will answer this question by providing. . . that 'arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association'").

### 3.    The Instant Action Falls within the Scope of the Arbitration Provision's Scope

Even assuming, *arguendo*, that NordVPN and TorGuard did not delegate the issue of arbitrability to AAA and that the delegation issue was for this Court to resolve in the first instance, then the matter should still be compelled to arbitration because the dispute falls squarely within the scope of the Arbitration Clause.   TorGuard drafted a broad Arbitration Clause, providing in part that:

> The Parties agree that ***any legal claim or dispute*** between them or against any agent, employee, successor, or assign of the other**, *whether related to this agreement or otherwise***, under this contract, including the validity of this arbitration clause**, *shall be resolved by binding arbitration by the American Arbitration Association*.**

(Terms of Service at 7).

This dispute falls squarely within two provisions.  First, TorGuard's lawsuit is a "legal claim or dispute between" it and NordVPN "whether related to this agreement *or otherwise*."  (emphasis added).   Because TorGuard worded its Arbitration Clause so broadly that it encompasses disputes related to the Terms of Agreement "*or otherwise*," it should have to live with the consequence of requiring its customers to arbitrate all disputes.

Moreover, this lawsuit is indeed related to the Terms of Service.  At the outset, TorGuard served two specific requests for admission on NordVPN, asking it to admit that NordVPN both (a) signed up as a customer of TorGuard and (b) consented to the Terms of Service.  (Ainsworth Decl., Ex. A at 7).  If the Terms of Service were not relevant to this lawsuit, TorGuard would not have served these Requests for Admission.  The Terms

of Service themselves demonstrate the relevance to this lawsuit—they include a "Conduct" clause, wherein users "agree that you or any other user(s) provided with access to your account will NOT engage in the following":

- "Using the service to engage in Denial-of-service ("Dos") attacks to any third-parties or to TorGuard.net;" (Terms of Service at 2) and

- "Accessing data, systems or networks including attempts to probe scan or test for vulnerabilities of a system or network or to breach security or authentication measures without the express written consent from the owner of the system or network." (*Id.*).

As it relates here, this Conduct clause hits upon one of the key issues of the complaint concerning the alleged DDoS attacks against TorGuard and accessing TorGuard's computers without authorization:

- "[A]fter TorGuard's business relationship with Collective 7 concluded, TorGuard began to suffer service outages on its website, due to distributed denial of service attacks (frequently referred to as 'DDoS' attacks." (Compl., ¶ 32)

- "The DDoS attacks directed against TorGuard were based upon the Information [that NordVPN allegedly stole]—the nature and way they occurred and were timed made it patently obvious that the attacker had obtained the Information from Collective 7 and was utilizing it as a roadmap for DDoS attacks." (*Id.*, ¶ 35).

- "Defendants knowingly, with intent to cause harm or loss, and without authorization, accessed the protected computer systems on which TorGuard had installed its information, thereby obtained [sic] TorGuard's Information from a protected computer without authorization." (*Id.*, ¶ 42)

- "Defendants further trafficked technological access barriers through which access to a protected computer may be obtained without authorization." (*Id.*, ¶ 43)

Indeed, TorGuard seeks damages based largely on its claim that NordVPN allegedly masterminded this supposed DDos attack.  TorGuard therefore clearly thinks the Terms of Service are relevant given its Requests for Admission and allegations in the Complaint concerning DDOS and unauthorized access—presumably TorGuard intends to argue that that NordVPN signed up for its service to accomplish such allegedly nefarious actions.  Therefore, TorGuard has placed in dispute through its Complaint and its Requests for Admission whether or not NordVPN caused these acts, and more importantly, whether it caused these acts by signing up for and utilizing TorGuard's services.  The instant dispute falls squarely within the Terms of Service and the matter should be ordered to arbitration.

### 4.      NordVPN Has Not Waived Its Right to Arbitrate, And Even if It Did, TorGuard Cannot Establish Prejudice

Since there is no legitimate basis on which TorGuard may dispute the validity of its own Terms of Service, NordVPN anticipates that TorGuard will oppose this motion and argue that NordVPN somehow waived its right to arbitrate.  But the Eleventh Circuit has established a two-part test to determine whether a party has waived its right to arbitrate, the application of which establishes that NordVPN has not waived its rights. "First, we decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and, second, we look to see whether, by doing so, that party has in some way prejudiced the other party."  *Ivax Corp. v. B. Braun of Am., Inc*., 286 F.3d 1309, 1315–16 (11th Cir. 2002) (citations omitted).  Moreover, "because federal law favors arbitration, *any party arguing waiver of arbitration bears a heavy burden of proof*." *Stone v. E.F. Hutton & Co*., 898 F.2d 1542, 1543 (11th Cir. 1990) (emphasis added).

Here, the totality of the circumstances demonstrate that NordVPN has not acted inconsistently with its right to arbitrate.  At the outset, TorGuard filed its lawsuit on June 26, 2019.  NordVPN is seeking to compel arbitration *approximately three months* later, and gave TorGuard notice of its intention to move to arbitrate in both its discovery

responses and in its Answer.  (*See* Ainswerth Decl., Ex. B at pp. 1-2, ¶ 1; *see also* NordVPN's Answer, ECF No. 34 at ¶¶ 10 & 12; ¶ 1 of Affirmative Defenses).  Thus, there can be no argument that this Motion is not timely presented. *Wilson v. Par Builders II, Inc.*, 879 F. Supp. 1187, 1189 (M.D. Fla. 1995) (six-month delay during which the only substantive litigation involved a motion to dismiss was not inconsistent with invoking the right to arbitrate).

Nor does it matter that NordVPN filed a Motion to Dismiss and served discovery on TorGuard.  Numerous courts have found that such actions do not constitute waiver. *See, e.g.*, *Lynch v. Solid Waste Haulers Florida, LLC*, 15 So.3d 919, 920 (First Dist. Ct. App. Fla. 2009) (rejecting argument that filing a motion to dismiss waived the right to arbitrate); *Hodgson v. Royal Caribbean Cruises, Ltd.*, 706 F. Supp. 2d 1248, 1257-58 (S.D. Fla. 2009) (defendant "did not substantially litigate to a point inconsistent with an intent to arbitrate" where it filed a motion to compel after it served discovery, replied to discovery requests, moved to dismiss, and then served an answer with affirmative defenses after its motion to dismiss was denied); *Dockeray v. Carnival Corp.*, 724 F. Supp. 2d 1216, 1222-23 (S.D. Fla. 2010) (citing cases for the proposition that filing a motion to dismiss does not waive the right to arbitrate, and holding that defendant did not waive its right to arbitrate by filing an answer that failed to raise arbitration as an affirmative defense).

Even if NordVPN somehow has acted inconsistently with its right to arbitrate (and it did not), TorGuard cannot establish the requisite prejudice to find waiver.  "Prejudice may be found if the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." *Hodgson, supra,* 706 F. Supp. 2d at 1256-57.  Here, arguably, the largest litigation expense the parties have incurred in the three months since the suit was filed was the briefing on the Motion to Dismiss.  (*See* ECF Nos. 16 & 21).  However, this is not an expense that TorGuard could have avoided if the matter were in arbitration, as the AAA rules allow for the filing of dispositive motions when the arbitrator grants the moving party such leave. *See* Rule

R-33 of the Commercial Rules[6]) ("The arbitrator may allow the filing of and make rulings upon a dispositive motion only if the arbitrator determines that the moving party has shown that the motion is likely to succeed and dispose of or narrow the issues in the case.); *see also* Rule R-33 of the Consumer Rules (same)).[7]

NordVPN also served Requests for Production of Documents and Interrogatories on TorGuard.  However, the AAA rules permit the arbitrator to "require the parties to exchange documents in their possession or custody on which they intend to rely" and "require the parties, in response to reasonable document requests, to make available to the other party documents. . . reasonable believed. . . to exist and to be relevant and material to the outcome of the disputed issues."   (Rule R-22(b)(i) & (iii) of Commercial Rules; Rule R-22(a)(1) of the Consumer Rules) ("the arbitrator may direct. . . specific documents and other information to be shared between the consumer and business"). Thus, TorGuard's responding to the Requests for Production is not an expense it would not have occurred outside the litigation.  And the service of interrogatories early in the litigation can hardly justify a finding of prejudice, especially when TorGuard, too, served such requests.  *See also Fuentes v. Security Forever LLC*, 2017 WL 7792708 at *7 (S.D. Fla. May 25, 2017) (finding that issuing interrogatories, requests for production, and requests for admission is a "minimal use of pre-trial discovery procedures" which does not result in prejudice.).

Accordingly, and because any doubts "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself *or an allegation of waiver,* delay, or a like defense to arbitrability," NordVPN has not waived its right to arbitrate.  *See Hodgson, supra,*  706 F. Supp. 2d at 1258 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927 (1983) (internal quotation marks omitted) (emphasis added).

---

[6] https://www.adr.org/sites/default/files/Commercial%20Rules.pdf

[7] https://www.adr.org/sites/default/files/Consumer_Rules_Web_0.pdf

### 5.     TorGuard's Separate Choice of Law Clause Does Not Save It From Arbitration

TorGuard may argue in its opposition that the Terms of Service include a Choice of Law clause which defeats arbitration.   That provision states that "[t]he sole and exclusive jurisdiction and venue for any action or proceeding arising out of or related to this Agreement shall be in an appropriate state or federal court located in the State of Florida, County of Orange."   (Terms of Service at 8).   Any such argument would be unpersuasive.

There is no conflict between this clause and the Arbitration Clause.  Specifically, the Arbitration Clause states that "Any award of the arbitrator(s) may be entered as a judgment *in any court of competent jurisdiction*."   (*Id.* at 7) (emphasis added).   The Choice of Law clause's selection of "an appropriate state or federal court located in the State of Florida, County of Orange," is such a "court of competent jurisdiction" and thus can be read in harmony with the Arbitration Clause.   (*Id.* at 8).   Given that TorGuard drafted the Arbitration Clause, the Court should not allow it to escape the legal ramifications of that clause by claiming there is a "contrary" clause in the same Terms of Service, especially in light of the established federal precedent that favors arbitration.

At best, TorGuard's Choice of Law clause can best be seen as a contingency clause to provide a forum in the event arbitration becomes unavailable, such as through a waiver by either or both parties of the right to arbitrate, or in the event a plaintiff files suit against TorGuard in a non-Florida venue so that TorGuard can transfer it to Florida. *Reyes v. Claria Life & Health Ins. Co.*, 190 So.3d 154 (Third Dist. Fla. 2016) is instructive.   There, the agreement at issue included a mandatory arbitration clause and a choice of law provision stating that venue was proper only in Delaware.  *Id.* at 156.   The Court of Appeal held that "the forum selection clause, standing alone or in combination with the arbitration clause, it not contradictory or ambiguous."  *Id.* at 158.   It reasoned that "[t]here are certainly circumstances where, despite the existence of an arbitration clause in a contract, a court may be called upon to determine, for example, whether there

14

exists a valid agreement to arbitrate, and whether the right to arbitration was waived." *Id.*

The *Reyes* court therefore held that the venue was improper in Florida and transferred the action to Delaware, and held that the Delaware forum was the appropriate venue to address and decide issues about the arbitration clause.   *Id.* at 158-59. Accordingly, TorGuard's separate Choice of Law clause does not mean that the case must be litigated in this Court.  It rather (1) acts as a vehicle to transfer any non-Florida lawsuit against TorGuard back to Florida where issues of arbitration can be decided, (2) allows this Court to have jurisdiction in the event the parties waived arbitration (which they have not) or in the event AAA decides the matter is not arbitrable, or (3) if, after arbitration, enforcement proceedings become necessary.

## V.   <u>CONCLUSION</u>

For these reasons, NordVPN respectfully requests that the Court grant its Motion to Compel Arbitration, order this matter to arbitration, and stay the action pending arbitration.

DATED:  October 10, 2019            Respectfully submitted,


By:      /s/ *Jeffrey H. Reeves*
_____
Jeffrey H. Reeves (admitted *pro hac vice*)
Cheryl Priest Ainsworth (admitted *pro hac vice*)
E-mail: jreeves@tocounsel.com
E-mail: cainsworth@tocounsel.com
THEODORA ORINGHER PC
535 Anton Blvd., Ninth Floor
Costa Mesa, CA  92626
Telephone:  714-549-6123
Attorneys for Defendant
*TEFINCOM S.A. D/B/A NORDVPN*

## RULE 3.01(g) CERTIFICATION

On October 8, 2019, counsel for NordVPN conferred with counsel for TorGuard, and counsel for TorGuard requested additional time to evaluate the law.  On October 10, 2019, counsel for TorGuard indicated that TorGuard would oppose the relief sought through this Motion.