IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VPNETWORKS, LLC d/b/a TORGUARD,

      Plaintiff,

vs.                                                                    Case No: 6:19-cv-01179-PGB-LRH

COLLECTIVE 7, INC., and TEFINCOM
S.A. d/b/a NORDVPN,

      Defendants.

_____/

## NORDVPN's FIRST AMENDED ANSWER AND COUNTERCLAIM

Tefincom, S.A. d/b/a NordVPN ("NordVPN") hereby answers the Complaint of Plaintiff VPNetworks, LLC d/b/a TorGuard ("TorGuard") and admits, denies, and alleges as follows:

### SUMMARY OF THE ACTION

1.      NordVPN admits the allegations of Paragraph 1 of the Complaint.

2.      NordVPN denies that it is a subsidiary of a Panama-based holding company. NordVPN admits that TorGuard is a VPN provider. NordVPN otherwise lacks sufficient information or belief to admit or deny the remaining allegations of Paragraph 2, and on that basis, denies them.

3.      NordVPN denies the entirety of the second sentence of Paragraph 3. NordVPN further denies that Collective 7 is affiliated with NordVPN. NordVPN lacks sufficient information or belief to admit or deny the remaining allegations of Paragraph 3, and on that basis, denies them.

4.    NordVPN denies the allegations of Paragraph 4.

5.    NordVPN denies the allegations of Paragraph 5.

6.    NordVPN denies that it violated the FUTSA, CADRA, or interfered with any of TorGuard's contractual and/or prospective business relationships.  The remainder of this paragraph contains legal conclusions, to which no response is required.  To the extent a response is required, the allegations are denied.

## PARTIES

7.    NordVPN lacks sufficient information or belief to admit or deny the allegations of Paragraph 7, and on that basis, denies them.

8.    NordVPN denies that it is affiliated with or controls Collective 7. NordVPN lacks sufficient information or belief to admit or deny the remaining allegations of Paragraph 8, and on that basis, denies them.

9.    NordVPN admits the allegations of Paragraph 9.

## JURISDICTION AND VENUE

10.    NordVPN denies that this Court has jurisdiction over the dispute between TorGuard and NordVPN.  TorGuard and NordVPN entered into a binding and valid arbitration agreement pursuant to TorGuard's Terms of Service on its website, which provides in part that "[t]he Parties agree that any legal claim or dispute between them or against any agent, employee, successor, or assign of the other, whether related to this agreement or otherwise, and any claim or dispute related to this agreement or the relationship or duties contemplated under this contract, including the validity of this arbitration clause, shall be resolved by

binding arbitration by the American Arbitration Association . . . under the Arbitration Rules then in effect." Therefore, jurisdiction lies exclusively with the American Arbitration Association, and NordVPN will be filing a motion to compel arbitration. NordVPN admits that it is a Panamanian corporation.

11.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, NordVPN denies them.

12.     NordVPN denies that venue is proper in this judicial district, based upon the arbitration agreement contained in TorGuard's Terms of Service. This paragraph otherwise contains legal conclusions to which no response is required. To the extent a response is required, NordVPN otherwise lacks sufficient information or belief to admit or deny the allegations, and on that basis, denies them.

13.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, NordVPN admits that it engages in interstate and foreign commerce. NordVPN otherwise lacks sufficient information or belief to admit or deny the remaining allegations, and on that basis, denies them.

## FACTUAL BACKGROUND

14.     NordVPN lacks sufficient information or belief to admit or deny the first and second sentences of Paragraph 14, and on that basis, denies them. NordVPN admits the third sentence of Paragraph 14.

15.     NordVPN admits the allegations of Paragraph 15.

16.     NordVPN denies that it is affiliated with Collective 7. NordVPN lacks sufficient information or belief to admit or deny the remaining allegations of

Paragraph 16, and on that basis, denies them.

17.     NordVPN admits that it is a competitor of TorGuard.  NordVPN denies the remaining allegations of Paragraph 17.

18.     NordVPN admits that on October 26, 2018, it sent an email to admin@torguard.net entitled "Request to stop illegal activities."  NordVPN wrote that email because it came to NordVPN's attention that TorGuard owned the domain name  "www.getnordvpn.com" which impermissibly used NordVPN's trademark in the domain name.  This domain name further directed users to TorGuard's website.  Based on the foregoing, NordVPN requested that TorGuard, among other things, cease using NordVPN's trademark on www.getnordvpn.com and any other website or other platform.  NordVPN refers to the entirety of this email for a full and accurate statement of its contents and otherwise admits that the selected language quoted by TorGuard appears in that email.  Except as expressly admitted herein, NordVPN denies all remaining aspects of this Paragraph.

19.     NordVPN lacks sufficient information or belief to admit or deny what TorGuard alleges to have learned, and on that basis, denies the allegation. NordVPN denies the remaining allegations of Paragraph 19.

20.     NordVPN denies the allegations of Paragraph 20.

21.     NordVPN lacks sufficient information or belief to admit or deny the allegations of Paragraph 21, and on that basis, denies the allegations.

22.     NordVPN lacks sufficient information or belief to admit or deny the first sentence of Paragraph 22, and on that basis, denies the allegations.  NordVPN

admits that its representative sent an email to Keith Murray and requested that he and Mr. Murray instant message or talk to discuss the relationship between TorGuard and NordVPN. Later, Benjamin Van Pelt was added to that email chain, wherein NordVPN's representative informed Mr. Van Pelt and Mr. Murray that he had discovered a security vulnerability in TorGuard's infrastructure and wanted to share the details about this vulnerability with them. NordVPN refers to the entirety of this email for a full and accurate statement of its contents. Except as expressly admitted herein, NordVPN denies all remaining aspects of this Paragraph.

23. NordVPN denies the allegations of Paragraph 23.

24. NordVPN denies the allegations of Paragraph 24.

25. NordVPN admits that its representative told Mr. Van Pelt and Mr. Murray that he wanted a gentleman's agreement wherein Mr. Van Pelt and Mr. Murray would assist with stopping TorGuard's affiliate, Kevin Vadala, from making defamatory statements about NordVPN online. The reason NordVPN requested this "gentleman's agreement" is because its representative wanted to make the VPN industry more cooperative by ending online feuds between the companies, which only hurt the industry. NordVPN further states that during this conversation, its representative disclosed to Mr. Van Pelt and Mr. Murray the publicly available IP address of TorGuard's server which had the security vulnerability -- a vulnerability which exposed the private certificates of TorGuard's servers to the public internet. NordVPN's representative advised Mr. Van Pelt and Mr. Murray to close access to that resource and to revoke and change the associated certificates. NordVPN's

representative never threatened to publish or disclose this security vulnerability (yet alone any confidential or trade secret information) to the public if Mr. Van Pelt and Mr. Murray refused to assist with stopping Mr. Vadala from making further defamatory statements.  Except as expressly admitted herein, NordVPN denies all remaining aspects of this Paragraph.

26.     NordVPN denies the allegations of Paragraph 26.

27.     NordVPN admits that, as explained in Paragraph 25, *supra*, its representative provided to Mr. Van Pelt and Mr. Murray the publicly available IP address for TorGuard's server which contained the security vulnerability.  Except as expressly admitted herein, NordVPN denies all remaining aspects of this Paragraph.

28.     NordVPN denies the allegations of Paragraph 28.

29.     NordVPN lacks sufficient information or belief to admit or deny the allegations of Paragraph 29, and on that basis, denies the allegations.

30.     NordVPN denies the allegations of Paragraph 30.

31.     NordVPN denies the allegations of Paragraph 31.

32.     NordVPN lacks sufficient information or belief to admit or deny the allegations of Paragraph 32, and on that basis, denies the allegations.

33.     NordVPN denies that it caused any DDoS attacks against TorGuard. NordVPN otherwise agrees with TorGuard's characterization of how a DDoS attack works, and on that basis, admits the allegation.

34.     NordVPN denies that it caused any DDoS attacks against TorGuard.

NordVPN otherwise agrees with TorGuard's characterization of how a DDoS attack works, and on that basis, admits the allegation.

35.     NordVPN denies that it caused any DDoS attacks against TorGuard. NordVPN lacks sufficient information or belief to admit or deny the allegations of Paragraph 35, and on that basis, denies the allegations.

36.     NordVPN denies that it caused any DDoS attacks against TorGuard. NordVPN lacks sufficient information or belief to admit or deny the allegations of Paragraph 36, and on that basis, denies the allegations.

37.     NordVPN lacks sufficient information or belief to admit or deny the allegations of Paragraph 37, and on that basis, denies the allegations.

38.     NordVPN lacks sufficient information or belief to admit or deny the allegations of Paragraph 38, and on that basis, denies the allegations.

39.     NordVPN denies the allegations of Paragraph 39.

## COUNT I
## (VIOLATION OF FLORIDA COMPUTER ABUSE AND DATA RECOVERY ACT)

40.     NordVPN incorporates by reference its responses to the allegations of paragraphs 1 through 39 of the Complaint as set forth herein.

41.     NordVPN lacks sufficient information or belief to admit or deny what information TorGuard stored on its computer, and on that basis, denies this portion of the  first sentence of Paragraph 41.  The remainder of this paragraph contains legal conclusions, to which no response is required.  To the extent a response is required, the allegations are denied.

42.     NordVPN denies the allegations of Paragraph 42.

43.     NordVPN denies the allegations of Paragraph 43

44.     NordVPN denies the allegations of Paragraph 44.

45.     NordVPN denies that it violated CADRA and that TorGuard has been damaged by any of NordVPN's actions.  The remainder of this paragraph contains legal conclusions, to which no response is required.  To the extent a response is required, the allegations are denied.

46.     NordVPN lacks sufficient information or belief to admit or deny whether TorGuard has incurred attorneys' fees and costs incident to bringing this action, and on  that basis, denies the allegations.  The remainder of this paragraph contains legal conclusions, to which no response is required.  To the extent a response is required, the allegations are denied.

## COUNT II
## (VIOLATION OF FLORIDA UNIFORM TRADE SECRETS ACT)

47.     NordVPN incorporates by reference its responses to the allegations of paragraphs 1 through 46 of the Complaint as set forth herein.

48.     This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

49.     NordVPN lacks sufficient information or belief to admit or deny the allegations of Paragraph 49 of the Complaint, and on that basis, denies them.

50.     NordVPN denies the allegations of Paragraph 50.

51.     This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied and NordVPN further  states that TorGuard is not entitled to any type of relief or

8

damages.

52.     This paragraph contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied and NordVPN further states that TorGuard is not entitled to any type of relief or damages.

53.     NordVPN lacks sufficient information or belief to admit or deny whether TorGuard has incurred attorneys' fees and costs incident to bring this action, and on that basis, denies the allegations. The remainder of this paragraph contains legal conclusions, to which no response is required. To the extent a response is required, the allegations are denied.

## COUNT III
## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS)

54.     NordVPN incorporates by reference its responses to the allegations of paragraphs 1 through 53 of the Complaint as set forth herein.

55.     NordVPN lacks sufficient information or belief to admit or deny the allegations of Paragraph 55 of the Complaint, and on that basis, denies them.

56.     NordVPN lacks sufficient information or belief to admit or deny the allegations of Paragraph 56 of the Complaint, and on that basis, denies them.

57.     NordVPN denies that it knows of any of TorGuard's business relationships with TorGuard's current and potential customers, apart from the relationship between NordVPN and TorGuard which was established when NordVPN signed up for TorGuard's services. NordVPN lacks sufficient information or belief to admit or deny whether Collective 7 has knowledge of TorGuard's

9

business relationships with current and potential customers, and on that basis, denies the remaining allegations of Paragraph 57.

58.      NordVPN admits that it is a direct competitor of TorGuard.  NordVPN lacks sufficient information of belief to admit or deny the remaining allegations of Paragraph 58, and on that basis, denies them.

59.      NordVPN denies the allegations of Paragraph 59.

60.      NordVPN denies that any of its actions caused damages to TorGuard. The remainder of this paragraph contains legal conclusions, to which no response is required. To the extent a response is required, the allegations are denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
(Lack of Jurisdiction)

1.      Jurisdiction lies exclusively with the American Arbitration Association ("AAA") as TorGuard and NordVPN entered into a binding arbitration agreement pursuant to TorGuard's Terms of Service on its website, which provides in part that "[t]he Parties agree that any legal claim or dispute between them or against any agent, employee, successor, or assign of the other, whether related to this agreement or otherwise, and any claim or dispute related to this agreement or the relationship or duties contemplated under this contract, including the validity of this arbitration clause, shall be resolved by binding arbitration by the American Arbitration Association. . . under the Arbitration Rules then in effect." This matter should therefore be ordered to arbitration.

## SECOND AFFIRMATIVE DEFENSE
(Failure to State a Claim)

2.     The Complaint, and each purported cause of action therein, fails to state a claim upon which relief can be granted against NordVPN.

## THIRD AFFIRMATIVE DEFENSE
(Failure to Plead with Particularity)

3.     TorGuard's allegations are not set forth with the requisite particularity, and therefore the Complaint is barred as against NordVPN.

## FOURTH AFFIRMATIVE DEFENSE
(Waiver)

4.     The Complaint and each cause of action therein are barred by the doctrine of estoppel, due to TorGuard's own acts and/or omissions with respect to the subject matter of the Complaint.

## FIFTH AFFIRMATIVE DEFENSE
(Estoppel)

5.     The Complaint and each cause of action therein are barred by the doctrine of estoppel, due to TorGuard's own acts and/or omissions with respect to the subject matter of the Complaint.

## SIXTH AFFIRMATIVE DEFENSE
(Unclean Hands)

6.     TorGuard is not entitled to relief because it comes to the Court with unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE
(Intervening and Superseding Causes)

7.     The Complaint and each cause of action therein are barred because

the injuries, damages, losses and/or detriment incurred by TorGuard in this action, if any, were the result of causes independent of the purported acts and/or omissions of NordVPN, which causes operated as intervening and superseding causes, thereby cutting off any liability on the part of NordVPN.

### EIGHTH AFFIRMATIVE DEFENSE
(Acts of Others)

8.      As a separate and affirmative defense to Complaint and each cause of action therein, NordVPN is informed and believes, and therefore alleges that the injuries, damages, losses and/or detriment which have been or will be sustained by TorGuard, if any, were proximately caused solely by the acts of persons, entities or other parties over whom NordVPN has no control, and for whose acts NordVPN is not responsible or in any way liable to TorGuard.

### NINTH AFFIRMATIVE DEFENSE
(Contributory/Comparative Negligence)

9.      As a separate and affirmative defense to Complaint and each cause of action therein, NordVPN is informed and believes, and therefore alleges, that TorGuard was careless and negligent with respect to the matters referred to in the Complaint and that such carelessness and negligence proximately contributed to the injuries, damages, losses and/or detriment which have been or will be sustained by TorGuard, if any, and that TorGuard's negligence and carelessness either bars or proportionately reduces any potential recovery.

### TENTH AFFIRMATIVE DEFENSE
(Justified and Privileged Conduct)

10.      The Complaint and each cause of action therein are barred because

NordVPN's alleged conduct was justified and privileged under the circumstances. NordVPN has done no more than insist upon its legal rights, and NordVPN's actions were done in the good faith belief that it was acting under a legal right.

### ELEVENTH AFFIRMATIVE DEFENSE
(Reasonable and Good Faith)

11.     The Complaint and each cause of action therein are barred because NordVPN acted reasonably and in good faith at all times material to the Complaint based on all relevant facts and circumstances known to NordVPN at the time it allegedly acted.  Thus, TorGuard is barred from recovery in this action.

### TWELFTH AFFIRMATIVE DEFENSE
(Lack of Damages)

12.     As a separate and affirmative defense to the Complaint and each cause of action therein, NordVPN is informed and believes, and therefore alleges, that TorGuard has suffered and will suffer no damages as a result of TorGuard's actions.

### THIRTEENTH AFFIRMATIVE DEFENSE
(Failure to Mitigate)

13.     TorGuard is not entitled to recover on its claims asserted in this action because it has failed to mitigate its alleged damages.

### FOURTEENTH AFFIRMATIVE DEFENSE
(Set Off)

14.     In the event there is a finding of damages for TorGuard, such damages should be reduced or offset by any benefits received by TorGuard under applicable law.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Preemption)

15.    TorGuard's purported causes of action for Violation of Florida Computer Abuse and Data Recovery Act and for Tortious interference with TorGuard's Business Relationships are preempted by the Florida Uniform Trade Secrets Act.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Reservation of Right to Assert Additional Defenses)

16.    All possible affirmative defenses may not have been alleged herein, insofar as sufficient facts were not available after reasonable inquiry upon the filing of this answer. Therefore, NordVPN reserves the right to amend this answer to allege additional affirmative defenses if subsequent investigation warrants.

## PRAYER FOR RELIEF

WHEREFORE, NordVPN prays for judgment as follows:

1.    That this matter be ordered to arbitration before the AAA;

2.    Alternatively, to the extent that the Court does not order this matter to arbitration, that TorGuard take nothing by virtue of its Complaint and that the action be dismissed with prejudice, and that NordVPN be awarded its attorneys' fees and costs incurred in the defense of this action; and

3.    For such other and further relief as the Court may deem just and proper.

## COUNTERCLAIM FOR LIBEL[1]

Tefincom, S.A. d/b/a NordVPN ("NordVPN") sues VPNETWORKS LLC d/b/a TorGuard ("TorGuard") and BENJAMIM VAN PELT ("Van Pelt") (collectively, "Counter-Claim Defendants") for libel and states:

### NATURE OF THE ACTION

1.     NordVPN is an industry leader in the VPN market.   One of its competitors, Counter-Claim Defendant TorGuard, likewise provides VPN services to consumers.  Van Pelt is TorGuard's Chief Executive Officer.

2.     Kevin Vadala ("Vadala") hosts websites and a YouTube channel where he posts reviews of VPN providers, including both TorGuard and NordVPN.

3.     With the goal of harming NordVPN's reputation in the VPN industry, Counter-Claim Defendants published to third parties the false and defamatory allegation that NordVPN had learned of a TorGuard vulnerability to data theft, NordVPN had exploited that vulnerability by stealing TorGuard trade secrets, and NordVPN had threatened to disclose TorGuard's vulnerability to data theft and its trade secrets to the public unless TorGuard stopped Vadala from posting negative reviews of NordVPN.  Vadala republished these allegations on his websites.

4.     At the time Counter-Claim Defendants published these allegations, they either knew the allegations were false or recklessly disregarded their falsity, and it was foreseeable to TorGuard and Van Pelt that Vadala would republish the

---

[1] NordVPN files this Counterclaim subject to and without waiver of its pending motion to compel arbitration. The Counterclaim is also subject to binding arbitration, and NordVPN seeks to assert it in this lawsuit only to the extent that the Court denies NordVPN's pending Motion to Compel Arbitration and Stay Action. [Dkt. 35].

allegations on his websites/channel.

5. Counter-Claim Defendants' publication of the false and defamatory allegations and Vadala's republication of the allegations caused actual injury to NordVPN.

## PARTIES

6. NordVPN is a Panamanian corporation, organized under the laws of the Republic of Panama. Its principal place of business is in Panama City, Republic of Panama.

7. TorGuard is a Florida limited liability company organized under the laws of the State of Florida, with its principal place of business in Orange County, Florida. TorGuard's sole member, Data Protection Services, is a Florida limited liability company organized under Florida law, with its principal place of business in Orange County, Florida. Data Protection Services' sole member is Van Pelt, an individual domiciled in Seminole County, Florida and who is a Florida citizen. Accordingly, Van Pelt is the person running TorGuard.

## JURISDICTION AND VENUE

8. Subject to NordVPN's Motion to Compel Arbitration, this Court has jurisdiction over this counter-claim pursuant to 28 U.S.C. § 1332(a)(3) in that this is an action between a Citizen of a State and in which a Citizen of a foreign state is an additional party where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This Court also has jurisdiction over this claim pursuant to 28 U.S.C. § 1367 in that this is a claim that is so related to

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(b) in that the Counter-Claim Defendants reside in this district and a substantial part of the events giving rise to the claim occurred in this district.

## BACKGROUND

### Vadala's Affiliate Relationship with TorGuard

10.     Using the tradename "Tom Spark Reviews," Vadala maintains a channel on YouTube where he posts video reviews of VPN services.  His posts receive thousands of views and are influential to both prospective and existing VPN customers.

11.     Vadala participates in an "affiliate" program created by TorGuard through which he is paid a commission from TorGuard for each visitor to Vadala's YouTube channel who purchases TorGuard's services through clicking a link embedded in the channel.  By promoting TorGuard's services over NordVPN's services, Vadala has increased the commission fees he receives from TorGuard.

12.     Vadala has been and continues to be a prominent advocate for TorGuard's services and a harsh critic of NordVPN's services.  In numerous posts, Vadala purposely and without any support has ranked NordVPN as one of the least trustworthy and reliable VPNs, complaining further about its price and its service. Conversely, he has consistently ranked TorGuard as the best VPN service provider.

13.     A VPN service reviewer can make greater commissions by

recommending the services of a small VPN service company such as TorGuard and by criticizing a large VPN service company such as NordVPN simply because NordVPN has a large subscriber base that the reviewer can attempt to persuade to change services.

14.     Because of the affiliate program and Vadala's work on behalf of TorGuard, Vadala is TorGuard's agent for purposes of this Counter-Claim.

**NordVPN Is Advised of a Security Vulnerability with TorGuard's Servers**

15.     On or about April 11, 2019, an anonymous individual signed into NordVPN's live chat feature of its website with the name of "Anon."   This anonymous individual stated in the chat that, "I have some very important information for you guys."   This unknown individual stated to NordVPN that its servers had been accessed without authorization and provided NordVPN with an Internet link to corroborate the allegation.

16.     NordVPN immediately began to investigate.   NordVPN verified that there had been a minor breach of one of its servers.   It quickly determined that no critical information had been stolen, that none of its users had been affected, and then fixed the issue.

17.     During NordVPN's investigation, it also discovered an online forum where messages had been posted by an anonymous user who claimed to have hacked TorGuard. These messages included an IP address which, when accessed publicly by a search engine, show all of TorGuard's internal scripts, security certificates, and other private information.

### NordVPN Informs TorGuard and Van Pelt of TorGuard's
### Security Vulnerability

18.     After discovering that TorGuard's servers had been hacked, NordVPN decided to inform TorGuard of its security vulnerability because a security vulnerability of any VPN company can have a negative impact on other VPN companies.   A NordVPN representative, Tomas Okmanas ("Okmanas"), sent a communication to Keith Murray ("Murray"), at that time believed to be the owner of TorGuard, to discuss the issue.   Murray then added Van Pelt, Chief Executive Officer of TorGuard, to the conversation.

19.     Okmanas then informed Van Pelt and Murray that TorGuard had been hacked by third parties.   Before he shared the source of this information, Okmanas asked TorGuard to take steps which would discourage its affiliate, Vadala, from continuing to post false and misleading reviews of NordVPN's services, and suggested the companies work cooperatively.   Okmanas did not threaten to disclose any information about TorGuard if TorGuard declined to cooperate.

20.     Van Pelt and Murray agreed that companies in the VPN industry should work together to discourage the posting of false and misleading reviews.

21.     Okmanas gave Van Pelt and Murray the information NordVPN had about the TorGuard vulnerability without Vadala changing or deleting his publications about NordVPN.   From NordVPN's perspective, this resolved the matter.

**TorGuard and Van Pelt Make False and Defamatory Allegations
About NordVPN on TorGuard's website and in a Meritless Lawsuit Which They
Then Publicize**

22.     On or about May 20, 2019, TorGuard published on its website a post entitled, "When Bug Bounties Border on Blackmail," which mischaracterized the discussion between Okmanas, Van Pelt and Murray as an attempt by NordVPN to blackmail TorGuard by threatening to reveal TorGuard's vulnerability and its trade secrets if it refused to force Vadala to remove his reviews of NordVPN from his website/channels. The post did not explicitly name NordVPN as having made this demand. Instead, it asserted only that the unprofessional demand had come from an unnamed competitor. And this suggestive publication was successful. In a May 25, 2019 video entitled, "I Pissed Off a VPN Company, Now They Blackmail Torguard," Vadala speculated that NordVPN was the culprit alluded to in TorGuard's post.

23.     Four days later, TorGuard confirmed to the public, including NordVPN subscribers and potential subscribers, that the veiled allusion in its May 20, 2019 post was to NordVPN by the filing, on May 24, 2019, of a lawsuit, *Data Protection Services, Inc. v. C-Seven Media, Inc. and Tefincom S.A. d/b/a NordVPN*, Case No. 6:19-cv-01179-PGB-LRH (the "First Lawsuit"), in the United States District Court for the Middle District of Florida, which named NordVPN as the supposed perpetrator of the allegedly extortionate "Bug Bounty" scheme.

24.     The substance of that action was that NordVPN had threatened that, unless TorGuard silenced Vadala, NordVPN would injure TorGuard by disclosing TorGuard trade secrets to the public.

25.     TorGuard further alleged that NordVPN had obtained TorGuard's trade secrets through a co-defendant, C-Seven Media, Inc. ("C-Seven"), a company which allegedly had a business relationship with TorGuard which had given C-Seven access to TorGuard's servers.

26.     TorGuard alleged that NordVPN used this "trade secret" to initiate distributed denial of services, or "DDoS," attacks against TorGuard to interfere with its servers and interrupt its services.  TorGuard and Van Pelt knew all their statements were false at the time they published their blog post and when the complaint was filed.  They made these statements with ill will and malice toward NordVPN and with the primary intention of inflicting injury on NordVPN.

27.     In reliance on its false and defamatory allegations, TorGuard asserted meritless claims against NordVPN for violation of the Florida Computer Abuse and Data Recovery Act, violation of the Florida Uniform Trade Secret Act, and Tortious Interference with TorGuard's Business Relationships.

28.     On May 27, 2019, TorGuard published the First Lawsuit by posting that Complaint on its Twitter account.

29.     TorGuard and Van Pelt also encouraged Vadala to republish the false and defamatory allegations in the meritless lawsuit on his YouTube channel. Vadala did so.

30.     The plan would have obvious benefits for TorGuard as customers researching VPN providers would be persuaded they should choose TorGuard over NordVPN.

### Vadala Begins to Post
### Defamatory Statements About NordVPN Online

31.     On May 28, 2019, four days after TorGuard filed its lawsuit, Vadala, foreseeably to TorGuard and Van Pelt, created a YouTube post entitled "TorGuard Suing NordVPN and C-7—What is the TLDR²?"   In that post, among other things, Vadala made the following false and defamatory statements about NordVPN, including that NordVPN committed the felony of blackmail:

    a.    "Now, when NordVPN was talking to TorGuard, they stated that a third party reviewer had caused damage to NordVPN's brand and in turn NordVPN would release confidential and trade secret information about TorGuard if the third party did not remove content about NordVPN's brand."

    b.    "So, what they did here, was seemingly blackmail TorGuard to get them to censor one of their affiliates, which is very, very, very sketchy."

    c.    "NordVPN is conducting very bad business practices here."

32.     NordVPN immediately sought to mitigate the harm caused to it by the publicity that TorGuard and Vadala were giving to the false and defamatory allegations contained in the TorGuard complaint by posting on NordVPN's website a statement under the title: "How we got sued by TorGuard for trying to disclose their own vulnerability to them."   The statement explained that, far from attempting to blackmail TorGuard, NordVPN had sought to help TorGuard in

---

² "TLDR" is an Internet acronym for "Too Long; Didn't Read."

securing its service and to obtain its assistance in combatting the posting of false and misleading VPN reviews.

33.     Days later, on May 31, 2019, Vadala, foreseeably to TorGuard and Van Pelt, posted a further YouTube video entitled, "NordVPN's response to TorGuard Lawsuit Doesn't Make Sense?"  In that video, Vadala made the following false and defamatory statements:

  a.     "Chances are I think that they did [blackmail TorGuard] because if NordVPN wasn't threatening or blackmailing TorGuard, they would have done it through emails or proper protocols."

  b.     "So interestingly enough, NordVPN claims that 'We provided the IP of the affected server without asking for anything in return so that TorGuard could patch up their vulnerability.' So NordVPN is claiming that they just wanted to help a competitive VPN provider to help make their service more secure out of the goodness of their heart.  As we know in this business world, this isn't really how things work."

34.     On June 26, 2019, this Court dismissed the First Lawsuit for lack of subject matter jurisdiction.

35.     Notwithstanding dismissal of the First Lawsuit, on June 27, 2019, Vadala created yet another YouTube post.  In that video, Vadala, foreseeably to TorGuard and Van Pelt, made the additional false and defamatory statements:

  a.     "It seems like this is actual proof of the conversation that was happening that NordVPN was actually blackmailing TorGuard asking TorGuard to somehow force me, an affiliate, to remove my critical content on NordVPN from my YouTube channel."

  b.     "Well this seems to be the first image, this is the first instance of proof that TorGuard is putting out there into the world to show that NordVPN has actually blackmailed them."

  c.     "The fact that NordVPN has been lying on their blog post

misleading customers is very sketchy. . . Are you okay with our VPNs blackmailing other VPN providers?"

36.     The above posts (collectively, referred to as "Vadala's Posts") all share a common theme based on a false and defamatory premise extrajudicially first publicized by TorGuard: that NordVPN had engaged in criminal activity by hacking and "blackmailing" TorGuard.  TorGuard and Van Pelt knew each of the statements about NordVPN were false or recklessly disregarded the truth of those statement.

### NordVPN Sends Vadala A Cease and Desist Letter, and Vadala Immediately Removes His Defamatory Posts

37.     On July 25, 2019, NordVPN sent Vadala a Cease and Desist letter related to the above-posts.  TorGuard's counsel was copied on that correspondence. In it, NordVPN demanded that Vadala immediately cease and desist from making further false and defamatory statements about NordVPN and remove the three above-referenced posts.

38.     In response, Vadala immediately deleted the videos from his YouTube website, tacitly admitting they were false and defamatory.

39.     All conditions precedent to the filing of this lawsuit have been satisfied or have occurred.

### COUNT I

40.     NordVPN repeats and re-alleges each and every allegation contained in paragraphs 1 through 39 above and incorporates them by reference as though fully set forth herein. NordVPN also respectfully reserves the right to prove other instances of libel, as those cited above are exemplary only.

41.     Through the posting of allegations on May 20, 2019, filing of its

complaint on May 24, 2019, posting of the complaint on its Twitter account on May 27, 2019, and its encouragement of Vadala to publicize the allegations of the complaint, TorGuard and Van Pelt, without justification or privilege, published to numerous third parties the false and defamatory allegations that NordVPN had hacked TorGuard's servers, stolen TorGuard trade secrets, and attempted to blackmail TorGuard.

42.     At the time that they published the allegations of and concerning NordVPN, Counter-Claim Defendants knew the allegations were false or recklessly disregarded their truth, and foresaw that Vadala and others would republish the allegations.

43.     TorGuard and Van Pelt published the allegations of and concerning NordVPN with ill will, malice, and for the primary purpose of inflicting injury on NordVPN which would inure to TorGuard's benefit.

44.     Upon information and belief, the allegations published directly by TorGuard and Van Pelt and those foreseeably republished by Vadala were read by numerous citizens of the State of Florida and throughout the United States.

45.     Counter-Claim Defendants' and Vadala's false and misleading statements about NordVPN imputed to NordVPN conduct and characteristics that are incompatible with the proper exercise of NordVPN's lawful business, trade, profession, and office.   These false and misleading statements about NordVPN further charged that NordVPN committed a crime, i.e., blackmail.

46.     NordVPN suffered actual injury from Counter-Claim Defendants'

publication of their false and defamatory allegations of and concerning NordVPN.

**PRAYER FOR RELIEF**

WHEREFORE, NordVPN prays for judgment against TorGuard and Van Pelt as follows:

A.   Presumed damages.

B.   Compensatory damages.

C.   Punitive damages.

D.   For such other and further relief as the Court deems just and proper.

Dated: January 31, 2020

Respectfully submitted,

*s/ Bradley R. Johnson*
Bradley R. Johnson
Florida Bar No. 709425
Michael R. Freed
Florida Bar No. 69205
Preethi Sekharan
Florida Bar No. 813591
Pierce N. Giboney
Florida Bar No. 124704
**GUNSTER YOAKLEY & STEWART, P.A.**
225 Water Street, Suite 1750,
Jacksonville, Florida 32202
(P): (904) 353-1980  (F): (904)-354-2170
Email:  bjohnson@gunster.com
Email:  mfreed@gunster.com
Email:  psekharan@gunster.com
Email:  pgiboney@gunster.com
Email:  yarnold@gunster.com
*Counsel for Tefincom S.A.*