**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

VPNETWORKS, LLC
D/B/A TORGUARD,

    Plaintiff,

vs.

COLLECTIVE 7, INC.; TEFINCOM S.A. D/B/A
NORDVPN; TOMAS OKMANAS, individually;
and SHIV GAUTAM, individually,

    Defendants.
_____/

CASE NO: 6:19-cv-01179-ORL-PGB-LRH

**JURY TRIAL DEMANDED**

**AMENDED COMPLAINT**

Plaintiff, VPNetworks, LLC d/b/a TorGuard, ("TorGuard") hereby files this Complaint against the Defendants, Collective 7, Inc., ("Collective 7"), Tefincom S.A. d/b/a NordVPN ("NordVPN"), Tomas Okmanas ("Okmanas"), and Shiv Gautam ("Gautam") (collectively the "Defendants"), and states as follows:

**SUMMARY OF THE ACTION**

1. TorGuard and NordVPN are competing providers of virtual private networks. Virtual private networks, known as "VPNs," employ encryption to provide secure access to a remote computer over the Internet.

2. TorGuard is a United States-based VPN provider headquartered in Orlando, Florida. NordVPN is a subsidiary of a Panama-based holding company.

3. Collective 7 is a Canadian hosting company formerly utilized by TorGuard as a service provider that, on information and belief, is affiliated with NordVPN.

4. Collective 7 and Gautam, Collective 7's agent, wrongfully obtained TorGuard's

2

confidential and trade secret business information while working as NordVPN's service provider. Collective 7 and Gautam provided this wrongfully obtained information to NordVPN.

5. NordVPN, through its agent Okmanas, then wrongfully used this information to blackmail TorGuard. Specifically, NordVPN and Okmanas threatened to release TorGuard's confidential and trade secret information unless TorGuard forced or coerced a third party who had been critical of NordVPN's business practices into silence, as this third party was publishing legitimate criticisms of issues associated with NordVPN's business practices.

6. This is not NordVPN's first foray into wrongful activity against TorGuard. As discussed below, NordVPN and Okmanas previously threatened TorGuard through the nom de guerre of "General Counsel Legal Affairs Tefincom S.A." NordVPN and Okmanas further orchestrated and perpetrated strategically timed distributed denial of service attacks (frequently referred to as "DDoS" attacks) against TorGuard designed to prevent TorGuard from doing business—such as a major DDoS attack that occurred on Black Friday and caused TorGuard to suffer significant economic and reputational damages.[1]

7. TorGuard seeks injunctive and other equitable relief, as well as compensatory damages in excess of $75,000.00, associated with Defendants' violations of Florida's Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 668.001 *et seq.*, Florida's Computer Abuse and Data Recovery Act ("CADRA"), Fla. Stat. § 668.801 *et seq.*, and Defendants' tortious interference with TorGuard's contractual and prospective business relationships.

**PARTIES**

8. TorGuard is a Florida Limited Liability Company organized under the laws of the State of Florida, with its principal place of business in Orange County, Florida. TorGuard's sole

---

[1] Black Friday is "the highest-volume shopping day in the United States[,]" and courts have recognized that activities directed against a business will often have maximum impact on sales when timed congruent with Black Friday. See e.g., Romag Fasteners, Inc. v. Fossil, Inc., 817 F.3d 782, 784 (Fed. Cir. 2016), vacated in part on other grounds, No. 3:10cv1827 (JBA), 2018 U.S. Dist. LEXIS 139637 (D. Conn. Aug. 16, 2018).

member, Data Protection Services, is a Florida Limited Liability Company organized under the laws of the State of Florida, with its principal place of business in Orange County, Florida. Data Protection Services' sole member, Benjamin Van Pelt, is an individual domiciled in Seminole County Florida, a resident of Seminole County, Florida, and a citizen of the State of Florida.

9. Defendant, Collective 7, is an Ontario Business Corporation, organized under the laws of Canada, with a principal place of business in Ontario, Canada. Collective 7 was previously a service provider to TorGuard.

10. On information and belief, Collective 7 is affiliated with or controlled by NordVPN.

11. Gautam held himself out to be Collective 7's Chief Technology Officer.

12. Gautam is a citizen of Canada.

13. Gautam previously represented to TorGuard that he had a "direct relationship" with the owners of NordVPN.

14. Gautam solicited TorGuard with a potential offer to purchase TorGuard.

15. NordVPN is a private corporation organized under the laws of the Republic of Panama. NordVPN's principal place of business is in Panama City, Republic of Panama.

16. Stichting Raveset is a legal entity established under the laws of the Netherlands.

17. Stichting Raveset owns 100% of NordVPN.

18. No person or entity owns 10% or more of Stichting Raveset.

19. Okmanas is a member of NordVPN's Advisory Board and is an agent of NordVPN.

20. Okmanas receives a salary from, or is otherwise financially compensated by, NordVPN.

21. On information and belief, Okmanas is an owner of Stichting Raveset.

12

22. Okmanas is a citizen of Lithuania.

## JURISDICTION AND VENUE

23. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), as Plaintiff is a Florida corporation, Defendant NordVPN is a Panamanian corporation, Defendant Collective 7 is a Canadian Corporation, Defendant Okmanas is a citizen of Lithuania and Defendant Gautam is a citizen of Canada.

24. This Court has personal jurisdiction over Defendants under Florida's long arm statute because *inter alia*, as set forth herein, Defendants conspired to commit a tort in Florida, resulting in harm in Florida, and one or more overt acts in furtherance of the conspiracy were committed within this judicial district in Florida.

25. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this judicial district.

26. At all times herein material, TorGuard and Defendants engaged in interstate and foreign commerce.

## FACTUAL BACKGROUND

27. TorGuard is a technology company. Its primary offering is a virtual private network service that provides encrypted and secure access to a remote computer over the Internet. Virtual private networks ("VPNs") are routinely used worldwide to keep Internet use and traffic secure from unauthorized and surreptitious access.[2]

28. VPN providers routinely contract with hosts worldwide to provide routing and other services for the VPN network.

---

[2] *See VirnetX Inc. v. Mitel Networks Corp.*, No. 6:11-CV-18, 2012 U.S. Dist. LEXIS 107280, at *13 (E.D. Tex. Aug. 1, 2012) (defining a VPN as "a network of computers which privately and directly communicate with each other by encrypting traffic on insecure paths between the computers where the communication is both secure and anonymous").

29. In 2018, TorGuard was contacted by Gautam to solicit TorGuard's business on behalf of Collective 7, a company that offers hosting services among other services. Shortly thereafter, TorGuard contracted with Collective 7. As part of this business relationship, Collective 7 and Gautam illicitly gained access to and took certain confidential and trade secret information owned by TorGuard and employed by TorGuard in providing its services. At the time, TorGuard was not made aware that Collective 7 and Gautam were affiliated with TorGuard's competitor, NordVPN.

30. NordVPN is a competing VPN provider that has routinely, and systematically, targeted and threatened TorGuard.

31. As just one example, in late 2018, an unspecified and apparently nameless individual writing from the email address "legal@nordvpn.com" and titled only "General Counsel Legal Affairs Tefincom S.A." wrote TorGuard and stated: "I am writing on behalf of Tefincom S.A., the owner of NordVPN product and NordVPN registered trademark . . ." This nameless "General Counsel" demanded that TorGuard take certain actions— threatening that, if TorGuard did not, then "[a] refusal to take actions mentioned above will constitute grounds to refer the matter to the national competition authorities, arbitration institutions or courts in order to defend against false advertising, unfair competition, intellectual property infringement, and other claims, as well as to resort to all other available civil, administrative and criminal remedies, which we are ready to employ. Not authorized business activities related to extortion of NordVPN trademark are taken very seriously and will result in immediate legal action if such illegal activities remain."

32. Upon information and belief, NordVPN and Okmanas illicitly obtained certain of TorGuard's confidential and trade secret information from Collective 7 and Gautam, who had a direct relationship with NordVPN's owners.

33. NordVPN and Okmanas confronted and threatened TorGuard with public

12

disclosure of this information unless TorGuard took certain actions to silence criticism of NordVPN. NordVPN's and Okmanas' presentation of this threat was brazen and involved in-person intimidation tactics by foreign actors.

34. On or about May 17, 2019 an unknown individual appeared unannounced at the personal residence of a TorGuard contractor, asking to speak with him about his relationship with TorGuard and the VPN industry.

35. Within an hour of this in-person and unannounced visit, the same TorGuard contractor received unsolicited correspondence from Okmanas on behalf of NordVPN. This correspondence stated that NordVPN had received certain of TorGuard's confidential and trade secret information and requested to set up an instant message chat to discuss this with TorGuard.

36. During the conversation, Okmanas stated that NordVPN's customers had dwindled, due to customer mistrust of NordVPN.

37. Okmanas accused TorGuard of causing this mistrust and stated that an individual allegedly friendly to TorGuard had posted negative content about NordVPN on YouTube, causing NordVPN to suffer business losses.

38. Okmanas then told TorGuard's representative that it wanted a "gentleman's agreement" whereby NordVPN would not publish TorGuard's confidential and trade secret information illicitly obtained by NordVPN if TorGuard persuaded (through whatever means) this individual to remove his negative YouTube postings about NordVPN.

39. NordVPN, through Okmanas, stated that if TorGuard did not comply, NordVPN would publish TorGuard's confidential and trade secret information.

40. Okmanas proceeded to provide TorGuard with examples of TorGuard's confidential and trade secret information (hereinafter the "Information").

41. Based on the nature and content of the Information, it is apparent that Collective 7

and Gautam provided the Information to NordVPN.

42. TorGuard earlier terminated its contract with Collective 7.

43. On information and belief, several members of Collective 7, including Gautam, were agents of NordVPN.

44. At minimum, Gautam, who had access to the Information, had a "direct relationship" with the owners of NordVPN.

45. Moreover, after TorGuard's business relationship with Collective 7 concluded, TorGuard began to suffer service outages on its website due to distributed denial of service attacks (frequently referred to as "DDoS" attacks), preventing TorGuard from lawfully conducting its business.

46. DDoS attacks are Internet-based attacks where the attacker attempts to make a website unavailable by temporarily disrupting service by flooding a website or service with illegitimate traffic in a manner analogous to multiple individuals attempting to walk through a doorway at the same time—as multiple individuals attempting to enter a doorway would prevent all of the individuals from passing through the door, the flood of Internet traffic thereby prevents any users from accessing the website or service.

47. In a DDoS attack, the legitimate users or potential users of the Internet-based service are prevented from accessing the service due to the flood of illegitimate traffic.

48. Since January 2018, NordVPN and Okmanas, using the Information they illicitly obtained from Collective 7 and Gautam, perpetrated multiple DDoS attacks against TorGuard designed to inflict maximum damage upon TorGuard's business and reputation. The nature and way that the DDoS attacks occurred and were timed made it patently obvious that NordVPN and Okmanas had obtained the Information from Collective 7 and Gautam, and were utilizing the Information as a roadmap for the DDoS attacks.

49. As a result of the website outages caused by NordVPN's and Okmanas' DDoS attacks, TorGuard's business relationships with its clients and potential clients have been negatively affected and TorGuard has suffered significant losses. Many of TorGuard's potential customers were unable to sign up for TorGuard's services because of these coordinated DDoS attacks, which were only possible due to Defendants' illicit access to and use of the Information.

50. As just one example, as a result of one DDoS attack on November 23, 2018—otherwise known as Black Friday—TorGuard suffered outages that resulted in hundreds of cancellations of orders, causing TorGuard to suffer enormous losses in a single day.

51. Defendants' activities are made more egregious by NordVPN's apparent attempts—through its agents Collective 7 and Gautam—to purchase or otherwise acquire TorGuard, with the obvious inference that NordVPN's coordinated attacks against TorGuard would continue unless TorGuard acquiesced to NordVPN's demands.

## COUNT I
## VIOLATION OF FLORIDA COMPUTER ABUSE AND DATA RECOVERY ACT ("CADRA")
*Against Defendants*

52. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 51 above as if herein fully set forth.

53. Gautam was acting on behalf of and at the direction of, and in the course and scope of his employment with, Collective 7.

54. TorGuard's Information was stored on computer systems that constituted a "protected computer" as defined under CADRA, Florida Statutes § 668.802(6), because these systems were used in connection with the operation of TorGuard's business and they stored information, programs, or code in connection with the operation of TorGuard's business that could be accessed only through a technological access barrier, as defined under CADRA, Florida

Statutes § 668.802(7).

55. On or about January 16, 2018, Defendants knowingly, with intent to cause harm or loss, and without authorization, accessed the protected computer systems on which TorGuard maintained its Information, thereby obtaining TorGuard's Information in violation of CADRA, Florida Statutes § 668.803, and causing harm or loss to TorGuard in violation of CADRA.

56. Defendants further trafficked technological access barriers through which access to a protected computer may be obtained without authorization, in violation of CADRA, Florida Statutes § 668.803.

57. Defendants committed the acts set forth herein knowingly and with intent to cause loss as defined under CADRA, Florida Statutes § 668.802(5), including intending to profit as a result of their CADRA violations.

58. Gautam was acting on behalf of and at the direction of, and in the course and scope of his employment with, Collective 7.

59. Okmanas was acting on behalf of and at the direction of, and in the course and scope of his employment with, NordVPN.

60. TorGuard has been damaged by Defendants' violations of CADRA, and is entitled pursuant to CADRA, Florida Statutes § 668.804(1), to recover such damages, to recover Defendants' profits gained as a result of their CADRA violations, to injunctive relief to prevent any future violations of CADRA, and to recovery of the Information.

61. TorGuard has incurred reasonable attorneys' fees and costs incident to bringing this action. Pursuant to Fla. Stat. § 668.04(2), Defendants are required to reimburse Plaintiff for all reasonable attorneys' fees incurred due to Defendants' violations of CADRA.

WHEREFORE, TorGuard asks the Court to enter a judgment against Defendants awarding it (a) TorGuard's actual damages pursuant to Fla. Stat. § 668.804(1)(a); (b) Defendants' profits

from violating CADRA that are not included in TorGuard's actual damages, pursuant to Fla. Stat. § 668.804(1)(b); (c) injunctive and other equitable relief from the Court to prevent a future violation of Fla. Stat. § 668.803, including without limitation, an order prohibiting Defendants from further disclosing TorGuard's confidential information, pursuant to Fla. Stat. § 668.804(1)(c); (d) an order requiring Defendants to return TorGuard's confidential information and all copies thereof, pursuant to Fla. Stat. § 668.04(1)(d); (e) TorGuard's reasonable attorneys' fees and other litigation costs, pursuant to Fla. Stat. § 668.04(2), as the prevailing party; and (e) such additional relief that this Court deems fair and equitable.

### COUNT II
### VIOLATION OF FLORIDA UNIFORM TRADE SECRETS ACT ("FUTSA")
*Against Defendants*

62. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 51 above as if herein fully set forth.

63. TorGuard's Information constitutes trade secret information, pursuant to Fla. Stat. § 688.002(4), as the Information derives economic value for TorGuard by not being generally known to or readily ascertainable to other persons – especially to its competitors, such as NordVPN.

64. TorGuard developed the Information and uses the Information, and derivative works thereof, to provide its VPN services to its clients and to develop and market other technological solutions. TorGuard has at all times relevant to this action taken reasonable efforts to protect the secrecy of the Information.

65. Defendants misappropriated the Information as defined in Fla. Stat. § 688.002(2). Collective 7 and Gautam obtained and disclosed the Information to NordVPN and Okmanas without consent of TorGuard and did so through improper means – specifically, by exceeding

their authorization to access such Information, pursuant to Fla. Stat. § 688.002(2)(b)(1.). NordVPN and Okmanas knew or had reason to know that Collective 7 and Gautam had obtained the Information by improper means pursuant to Fla. Stat. § 688.002(2)(a). Thus, Defendants violated FUTSA.

66. Gautam was acting on behalf of and at the direction of, and in the course and scope of his employment with, Collective 7.

67. Okmanas was acting on behalf of and at the direction of, and in the course and scope of his employment with, NordVPN.

68. TorGuard has been damaged by Defendants' violations of FUTSA, and is entitled under FUTSA, Fla. Stat. § 688.003, to injunctive relief, enjoining further misappropriation by Defendants. Further, per Fla. Stat. § 688.004(1), TorGuard is entitled to recover monetary damages, including Defendants' profits gained as a result of their FUTSA violations, as well as for TorGuard's actual losses.

69. TorGuard further requests exemplary damages pursuant to Fla. Stat. § 688.004(2), in the amount of twice the amount of actual damages awarded, as Defendants' conduct was a malicious and willful misappropriation of TorGuard's Information.

70. TorGuard has incurred reasonable attorneys' fees and costs incident to bringing this action. Pursuant to Fla. Stat. § 688.005, Defendants should be required to reimburse TorGuard for all reasonable attorneys' fees incurred due to Defendants' malicious and willful misappropriation of TorGuard's Information.

WHEREFORE, TorGuard asks the Court to enter a judgment against Defendants awarding it (a) TorGuard's actual losses pursuant to Fla. Stat. § 668.004(1); (b) Defendants' profits from violating FUTSA that are not included in TorGuard's actual damages, pursuant to Fla. Stat. § 668.004(1); (c) exemplary damages in the amount of twice the actual losses incurred by

Defendants pursuant to § 668.004(2); (d) injunctive and other equitable relief from the Court to prevent a future violation of FUTSA pursuant to § 668.003, including without limitation, an order prohibiting Defendants from further disclosing TorGuard's Information; (e) TorGuard's reasonable attorneys' fees and other litigation costs, pursuant to Fla. Stat. § 668.005, as the prevailing party; and (f) such additional relief that this Court deems fair and equitable.

## COUNT III
## TORTIOUS INTERFERENCE WITH TORGUARD'S BUSINESS RELATIONSHIPS
*Against Defendants*

71. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 51 above as if herein fully set forth.

72. TorGuard maintains advantageous business relationships with its potential customers and current customers by providing website-based services that require TorGuard to have an active, fully functional website at all times.

73. The functionality of TorGuard's website is integral to the provision of web-based services to its current customers, as well as to providing a mechanism for prospective customers to enter into business relationships with TorGuard.

74. Defendants knew of TorGuard's business relationships with its current and potential customers.

75. Defendants NordVPN and Okmanas are direct competitors and operate the same type of business, and Defendants Collective 7 and Gautam were engaged in a business relationship with TorGuard in January of 2018 that allowed Collective 7 and Gautam to gain familiarity with TorGuard's business model.

76. Defendants' actions constituted intentional and unjustified interference with TorGuard's business relationships with its potential and current customers.

77. Gautam was acting on behalf of and at the direction of, and in the course and

scope of his employment with, Collective 7.

78.   Okmanas was acting on behalf of and at the direction of, and in the course and scope of his employment with, NordVPN.

79.   TorGuard has suffered damage including but not limited to, damages to TorGuard's reputation, loss of profits, and other financial amounts, the specific amount of which will be determined at trial.

WHEREFORE, TorGuard asks the Court to enter a judgment against Defendants awarding TorGuard its actual losses and such additional relief that this Court deems fair and equitable.

**REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.**

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: February 20, 2020

Respectfully Submitted,

**ADAM C. LOSEY, ESQ. (FBN 69658)**
Primary Email: alosey@losey.law
Secondary Email: docketing@losey.law
**DAVID A. MEEK, ESQ. (FBN 59314)**
Primary Email: dmeek@losey.law
Secondary Email: docketing@losey.law
**ROBERT J. RUBIN, ESQ. (FBN 113393)**
Primary Email: rrubin@losey.law
 **LOSEY PLLC**
1420 Edgewater Drive
Orlando, Florida 32804
Phone:  407.906.1605
Lead Trial Counsel
*Counsel for Plaintiff*