## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

VPNETWORKS, LLC,

        Plaintiff,

v.                                                        Case No:  6:19-cv-1179-Orl-40LRH

COLLECTIVE 7, INC., TEFINCOM S.A.,
TOMAS OKMANAS and SHIV
GAUTAM,

        Defendants.
_____/

## ORDER

This cause comes before the Court on Plaintiff's Motion to Reopen Case and for Reconsideration (Doc. 64 (the "**Motion**")), filed March 6, 2020. Defendants Collective 7, Inc. ("**Collective 7**"), and Tefincom S.A. d/b/a NordVPN ("**NordVPN**") responded in opposition. (Docs. 67, 69). Upon consideration, the Motion is due to be denied.

## I.    BACKGROUND

This case arises from Defendants' alleged violations of Florida's Computer Abuse and Data Recovery Act, the Florida Uniform Trade Secrets Act, and tortious interference with business relationships. (Doc. 55).

Plaintiff and NordVPN are competing technology companies in the business of providing Virtual Private Network ("**VPN**") services. (*Id.* ¶¶ 27, 30). As part of a strategy to better understand the industry, NordVPN signs up for other VPN providers' services. (Doc. 35-2, ¶ 4). On September 3, 2018, Defendant Tomas Okmanas—one of NordVPN's agents—signed up for Plaintiff's services. (*Id.* ¶ 6). Defendant Okmanas did so on NordVPN's behalf, for NordVPN's business purposes, and with NordVPN's authorization.

(*Id.* ¶ 6). Plaintiff, in turn, accepted Defendant Okmanas's payment, processed the payment, and granted access to its services. (*Id.* at p. 5).

Plaintiff requires customers to accept its Terms of Service. (Doc. 35-1, pp. 28–37) ("By entering our website and/or purchasing services, The Client agrees to be bound by these Terms and conditions."). The Terms of Service contains an Arbitration Clause, which states:

> The Parties agree that any legal claim or dispute between them or against any agent, employee, successor, or assign of the other, whether related to this agreement or otherwise, and any claim or dispute related to this agreement or the relationship or duties contemplated under this contract, including the validity of this arbitration clause, shall be resolved by binding arbitration by the American Arbitration Association (or name other firm providing arbitration services, i.e., National Arbitration Forum), under the Arbitration Rules then in effect. Any award of the arbitrator(s) may be entered as a judgment in any court of competent jurisdiction. . . This agreement shall be interpreted under the Federal Arbitration Act.

(*Id.* at p. 34) (the "**Arbitration Agreement**" or the "**Agreement**").

NordVPN moved to compel arbitration pursuant to the Terms of Service. (Doc. 35). The Court granted the motion and stayed the case pending arbitration. (Doc. 62 (the "**Arbitration Order**")). Plaintiff now moves for the Court to reconsider the Arbitration Order and to reopen the case. (Doc. 64).

## II.   STANDARD OF REVIEW

Reconsideration is an extraordinary remedy which will only be granted upon a showing of one of the following: (1) an intervening change in law, (2) the discovery of new evidence which was not available at the time the Court rendered its decision, or (3) the need to correct clear error or manifest injustice. *Fla. Coll. of Osteopathic Med., Inc. v. Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998). "A motion for reconsideration cannot be used to relitigate old matters, raise argument or present

evidence that could have been raised prior to the entry of judgment." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (internal quotation marks omitted). It is wholly inappropriate in a motion for reconsideration to relitigate the merits of the case or to "vent dissatisfaction with the Court's reasoning." *Madura v. BAC Home Loans Servicing L.P.*, No. 8:11-cv-2511-T-33TBM, 2013 WL 4055851, at *2 (M.D. Fla. Aug. 12, 2013) (citation omitted). Instead, the moving party must set forth "strongly convincing" reasons for the Court to change its prior decision. *Id.* at *1.

## III.   DISCUSSION

Plaintiff premises its Motion on the following grounds: (1) the Court failed to determine the threshold issue of whether a binding contract exists between Plaintiff and NordVPN; (2) the Arbitration Order did not include a waiver analysis; and (3) the Court improperly ordered Plaintiff to arbitrate claims against Collective 7 and Defendant Gautam. (Doc. 64, pp. 1–2). For the reasons stated below, none of these arguments offer sufficient justification for granting Plaintiff the extraordinary remedy of reconsideration.

### A.   The Arbitration Order Resolved the Privity Issue

Plaintiff's primary argument for reconsideration is that the Court failed to decide whether a valid arbitration agreement existed between Plaintiff and NordVPN. According to Plaintiff, "When the very existence of the agreement between the parties is in question, the court must determine whether an agreement between the parties exists." (*Id.* at p. 4) (citing *Protective Life Ins. v. Lincoln Nat'l Life Ins.*, 873 F.2d 281, 282 (11th Cir. 1989)). The Arbitration Order implicitly made such a determination. However, for the avoidance of doubt, the Court will elaborate on the issue.

Plaintiff concedes that a valid and enforceable arbitration agreement exists between itself and Defendant Okmanas, but opposes arbitration because NordVPN is a non-party to the agreement. (Doc. 64, p. 7). Thus, the determinative issue before the Court was not the existence of the Agreement, but whether Defendant Okmanas executed the Agreement on NordVPN's behalf. The evidence before the Court answered that question in the affirmative. In compelling arbitration, the Court found that:

> On September 3, 2018, one of NordVPN's agents signed up for Plaintiff's services. This agent did so on NordVPN's behalf, for NordVPN's business purposes, and with NordVPN's authorization. Plaintiff, in turn, accepted the agent's payment, processed the payment, and granted access to its services.

(Doc. 62, pp. 5–6).

In Florida, an undisclosed principal may enforce a contract made by its agent. *E.O. Painter Fertilizer Co. v. Dupont*, 47 So. 928, 929 (Fla. 1908); *Arnold Altex Aluminum Co. v. Sire Plan, Inc.*, 149 So. 2d 79, 80 (Fla. 3d DCA 1963). Notwithstanding, Plaintiff asks the Court to recognize an exception to this general rule. According to Plaintiff, because Defendant Okmanas did not explicitly state that he was acting on NordVPN's behalf, Plaintiff cannot be required to contract unknowingly with its competitor. (Doc. 36, p. 4) (citing *Lighting Fixture & Elec. Supply Co. v. Continental Ins.*, 420 F.2d 1211 (5th Cir. 1969)).[1] However, a close reading of *Lighting Fixture* fails to provide much support—if any—to Plaintiff's position.

---

[1]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

In *Lighting Fixture*, an insurance company resisted paying an insured's claim for fire damage, claiming the policy did not list the correct property owner. 420 F.2d at 1212. The court recognized the general rule that undisclosed principals may sue upon contracts made by their agents, and acknowledged that, "Florida courts have not had occasion to formulate any exceptions to this rule." *Id.* at 1215. The court then went on to say:

> We believe that a Florida court would adhere to the rule obtaining elsewhere that a third party . . . may rescind such a contract if he was induced to enter into it by a representation that the agent was not acting for a principal and if, as the agent or principal had notice, he would not have dealt with the principal.

*Id.* (internal citations omitted). However, the court ultimately held that, even if such an exception existed, it would not apply. *Id.*[2] Accordingly, the court emphasized that its discussion of possible exceptions was simply dicta. *Id.* ("[W]e trudge no further through the glades of Florida law than is necessary for the disposition of this case.").

In the half-century since *Lighting Fixture*, no Florida court (or federal court applying Florida law) has embraced its hypothesized exception.[3] Such silence is deafening. Therefore, this Court finds that *Lighting Fixture* provides no binding precedent that affects the resolution of this case.

At any rate, even if the Court were to adopt Plaintiff's proposed exception, Plaintiff fails to establish its applicability to the present Agreement. As articulated by *Lighting Fixture*, a party seeking to rescind a contract must demonstrate that: (1) he was induced to execute the contract by a representation that the agent was not acting for a principal;

---

[2] "We hold only that Lighting Fixture, as the undisclosed principal of Electric Supply, was entitled under the contract made on its behalf to receive payment from Continental." *Id.*

[3] Indeed, Plaintiff cites no other cases in support of its position, but rather hangs its entire argument on *Lighting Fixture.*

and (2) he would not have dealt with the principal otherwise. *Id.* at 1215. Neither of those requirements is present here.[4]

First, Plaintiff fails to identify an express representation—rather than an omission—by Defendant Okmanas that he was not acting on behalf of NordVPN when he signed up for Plaintiff's VPN services. Plaintiff argues that, "The Agreement contains a confirmation to [Plaintiff] that the personal VPN services contracted for are for 'individuals only and for personal use.'" (Doc. 36, p. 6). This is not quite accurate. Plaintiff offers several distinct services, but utilizes the same Terms of Service regardless of the specific service being purchased. (Doc. 35-1, pp. 28, 39, 50).[5] Although the Terms of Service do state that, "The Service is provided to individuals only and for personal use," this language appears only under a clause entitled "Encrypted Email." (*Id.* at pp. 30, 41, 52). Therefore, assuming *arguendo* that this language qualifies as an affirmative representation by the user, it appears to apply only to users of Plaintiff's encrypted email service—not Plaintiff's VPN service. Plaintiff concedes that Defendant Okmanas registered for its VPN service, so the reference to "personal use" is irrelevant to the Agreement as executed.

Second, the Court is unconvinced by Plaintiff's claim that it would not have contracted with NordVPN but for Defendant Okmanas' alleged misrepresentation. The sign-up process for Plaintiff's VPN service is instantaneous; any user with a valid form of payment can register and receive immediate access. Therefore, the contention that Plaintiff is selective about its contracting partners strains credulity. As was the case for

---

[4]   Moreover, Plaintiff has not argued that the Agreement should be rescinded.

[5]   "These terms apply to the clients and subscribers of [Plaintiff's] VPN, Proxy and Email services." (*Id.*).

the insurance company in *Lighting Fixture*, it appears that a VPN user's identity and affiliation are "of no particular concern" to Plaintiff. 420 F.2d at 1215.

To summarize, Plaintiff has not made a compelling argument against the application of the general rule that an undisclosed principal (NordVPN) may enforce a contract made by its agent (Defendant Okmanas). Thus, the Court stands by its earlier finding that NordVPN may enforce the Arbitration Agreement against Plaintiff.

### B.   Plaintiff's Waiver Argument is Insufficient to Warrant Reconsideration

In opposing arbitration, Plaintiff argued that NordVPN waived its rights under the Agreement. (Doc. 26, p. 8). "Waiver occurs when a party substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.)*, 62 F.3d 1356, 1366 (11th Cir. 1995). The Arbitration Order did not include an explicit analysis of the waiver issue. Plaintiff now argues that this omission warrants the Court's reconsideration.

To be sure, "questions of waiver based on a party's litigation conduct are for the courts to resolve." *Grigsby & Assocs., Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1354 (11th Cir. 2011).[6] That said, a court's failure to consider an argument is not a clear error of law or fact if the court would have reached the same conclusion anyway. *See Rollins v. Horn*, No. 00-cv-1288, 2006 WL 2504307, at *3 (E.D. Pa. Aug. 17, 2006). Such is the case here.

In arguing that NordVPN waived its right to compel arbitration, Plaintiff faced an uphill battle. *See Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990) ("[B]ecause federal law favors arbitration, any party arguing waiver of arbitration bears a

---

[6]   The Court notes that Plaintiff raises this argument and cites this case for the first time in its Motion for Reconsideration.

heavy burden of proof."). Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Before moving the Court to compel arbitration, NordVPN's litigation conduct consisted of filing a motion to dismiss, serving preliminary written discovery,[7] and answering the Complaint.[8] The reporters are replete with cases rejecting waiver arguments in similar circumstances. *See, e.g.*, *Hodgson v. Royal Caribbean Cruises, Ltd.*, 706 F. Supp. 2d 1248, 1257–58 (S.D. Fla. 2009) (finding no waiver where the defendant served discovery, responded to discovery requests, moved to dismiss, and then served an answer with affirmative defenses after the court denied its motion to dismiss); *see also Dockeray v. Carnival Corp.*, 724 F. Supp. 2d 1216, 1222–23 (S.D. Fla. 2010) (holding that "[a] party does not waive its right to arbitrate by filing a motion to dismiss" and collecting cases holding same); *Lynch v. Solid Waste Haulers Fla., LLC*, 15 So. 3d 919, 920 (Fla. 1st DCA 2009) (rejecting notion that filing a motion to dismiss waived the right to arbitrate).

The Court agrees with the reasoning of the above cases and finds that NordVPN has not substantially participated in this litigation to a point inconsistent with an intent to

---

[7]  "[W]aiver will normally be found only where . . . both parties had engaged in extensive discovery." *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068–69 (3d Cir. 1995).

[8]  NordVPN's Answer raised the Arbitration Agreement as an affirmative defense. (Doc. 34, p. 8). "Once a defendant, by answer, has given notice of insisting on arbitration[,] the burden is heavy on the party seeking to prove waiver." *Gen. Guar. Ins. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 929 n.5 (5th Cir. 1970).

arbitrate. Accordingly, the Arbitration Order would not have reached a different conclusion if the Court expressly addressed the waiver issue.

### C.    The Court Will Stay Plaintiff's Nonarbitrable Claims

Plaintiff's final grievance concerns the Court's direction to arbitrate "all of its claims." (Doc. 62, p. 4). The Court agrees with Plaintiff that this language reads too broadly—Plaintiff cannot be obliged to arbitrate claims against non-parties to the Agreement.[9] In any event, the Court now clarifies that Plaintiff is required to arbitrate all claims *subject to the Arbitration Agreement*.

The only remaining question involves Plaintiff's claims that are *not* subject to the Arbitration Agreement (*i.e.*, Plaintiff's claims against Collective 7 and Defendant Guatam).[10] "When confronted with litigants advancing both arbitrable and nonarbitrable claims, . . . courts have discretion to stay nonarbitrable claims." *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) (collecting cases). In considering whether to exercise this discretion, courts should determine "whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Id.* Courts also stay litigation of nonarbitrable claims to preserve judicial resources and avoid confusion. *Am. Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 964 (4th Cir. 1980). Relevant considerations include the expense and

---

[9]   The Court notes, however, that it made this statement in the context of granting a motion to compel arbitration brought by NordVPN alone—not all Defendants.

[10]   Plaintiff contends that its claims against Defendant Okmanas are nonarbitrable because "Defendant Okmanas has not sought to arbitrate [Plaintiff's] claims against him." (Doc. 64, p. 8). The Agreement states that, "*any* legal claim or dispute . . . *shall* be resolved by binding arbitration." (Doc. 35-1, p. 34) (emphasis added). Plaintiff does not dispute that it agreed to arbitrate all claims against Defendant Okmanas, so the Court questions the relevance of Defendant Okmanas's failure to request an arbitrator.

inconvenience of parallel litigation, the possibility of inconsistent determinations, and whether arbitrable and nonarbitrable claims arise out of the same set of facts. *See Provident Bank v. Kabas*, 141 F. Supp. 2d 310, 318–319 (E.D.N.Y. 2001).

Here, the Amended Complaint asserts the same causes of action—based on the same factual allegations—against all Defendants. (*See* Doc. 55, pp. 8–13). The arbitrable claims are therefore inextricable from the nonarbitrable claims, and allowing them to proceed through parallel forums risks inconsistent factual and liability determinations. A stay of the nonarbitrable claims would avoid this outcome and promote judicial economy. *See SBMH Grp. DMCC v. Noadiam USA, LLC*, 297 F. Supp. 3d 1321, 1328 (S.D. Fla. 2017) (staying nonarbitrable claims where claims could not be resolved without reference to claims subject to arbitration); *Murdock v. Santander Consumer USA Inc.*, No. 2:15-cv-268, 2016 WL 3913135, at *1–2 (M.D. Fla. July 20, 2016) (staying litigation where facts and circumstances of nonarbitrable claims were commingled with those subject to arbitration); *Tennant v. N. Franze Hospitality LLC*, No. 8:15-cv-2372, 2016 WL 8914366, at *2 (M.D. Fla. Apr. 5, 2016) (staying litigation necessary where infeasible to proceed without arbitrable claims); *Axa Equitable Life Ins. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1330, 1348 (S.D. Fla. 2009) (staying litigation where arbitrable claims arose out of the same facts and parallel proceedings could result in inconsistent determinations); *Petrik v. Reliant Pharm., Inc.*, No. 8:07-cv-1462, 2007 WL 3283170, at *3 (M.D. Fla. Nov. 5, 2007) (staying litigation where result in arbitration could bar Plaintiff's litigation claims).

Accordingly, the Court exercises its discretion to stay Plaintiff's nonarbitrable claims.

**IV.     CONCLUSION**

For the aforementioned reasons, is **ORDERED AND ADJUDGED** that Plaintiff's Motion to Reopen Case and for Reconsideration (Doc. 64) is **DENIED**. Plaintiff's nonarbitrable claims are **STAYED** pending the resolution of arbitration.

**DONE AND ORDERED** in Orlando, Florida on June 10, 2020.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties